GRAHAM AND FOSTER, CO-PARTNERS, *v.* GOOD-CELL, FORMER COLLECTOR OF INTERNAL REVENUE.

NO. 36.

EASTERN EQUITIES CORPORATION (FORMERLY AMERICAN GLUE COMPANY) *v.* UNITED STATES.

NO. 519.

DANIEL REEVES, INCORPORATED, *v.* ANDER-SON, INDIVIDUALLY AND AS COLLECTOR OF INTERNAL REVENUE.

JENNINGS, EXECUTRIX, *v.* SAME.

NOS. 463 AND 529.

WRIGHT & TAYLOR, INCORPORATED, *v.* LUCAS, COLLECTOR OF INTERNAL REVENUE.

NO. 565.

OAK WORSTED MILLS *v.* UNITED STATES.

TAFT WOOLEN COMPANY *v.* SAME.

SECOND NATIONAL BANK OF SAGINAW, TRUSTEE, *v.* SAME.

BOSTON PRESSED METAL COMPANY *v.* SAME.

NOS. 104, 105, 323, AND 337.

Argued December 8, 9, 10, 11, 1930.—Decided January 26, 1931.

410

*Mr. John E. Hughes* for Graham and Foster.

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher, Assistant Attorney General Rugg,* and *Messrs. Claude R. Branch, Sewall Key, Norman D. Keller,* and *George H. Foster,* Special Assistants to the Attorney General, were on the brief, for Goodcell.

*Mr. Robert E. Goodwin,* with whom *Mr. Harris H. Gilman* was on the brief, for Eastern Equities Corporation.

*Mr. Elkan Turk,* with whom *Messrs. Herman Goldman, Arthur Rothstein, Benjamin Wiener,* and *Donald Bourne* were on the brief, for Daniel Reeves, Incorporated.

*Mr. Ewing Everett,* with whom *Messrs. Robert N. Miller, J. Robert Sherrod,* and *Arthur N. Colton* were on the brief, for Jennings, Executrix.

*Mr. Donald V. Hunter,* with whom *Messrs. Robert N. Miller* and *S. Lyman Barber* were on the brief, for Wright & Taylor, Incorporated.

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher* and *Messrs. Claude R. Branch, J. Louis Monarch, S. Dee Hanson, Norman D. Keller,* and *John MacC. Hudson,* Special Assistants to the Attorney General, and *Erwin N. Griswold* were on the brief, for the United States, Anderson, and Lucas, in Nos. 519, 463, 529, and 565.

*Mr. Theodore B. Benson,* with whom *Messrs. Guil Barber, William Meyerhoff,* and *Percy A. Matthews* were on the brief, for the Oak Worsted Mills.

Messrs. *Frank J. Albus, Theodore B. Benson, Guil Barber, William Meyerhoff, Chester F. Williams, Percy A. Matthews,* and *Frederick G. Fischer* submitted for the Taft Woolen Company.

Mr. *W. A. Sutherland,* with whom Messrs. *Joseph B. Brennan, Samuel Nesbitt Evins, Elmer P. Tuttle,* and *Clement F. Haynsworth* were on the brief, for the Second National Bank of Saginaw, Trustee.

Mr. *Harry Friedman* for the Boston Pressed Metal Company.

*Assistant Attorney General Rugg,* with whom *Solicitor General Thacher, Assistant Attorney General Youngquist* and *Messrs. Claude R. Branch,* Special Assistant to the Attorney General, and *George H. Foster, Erwin N. Griswold, Bradley B. Gilman,* and *Lisle A. Smith* were on the briefs, for the United States in Nos. 104, 105, 323, and 337.

Mr. *Wayne Johnson,* on behalf of the Marshall-Wells Company; Messrs. *Robert N. Miller, Donald V. Hunter,* and *S. Lyman Barber;* Messrs. *Carl Taylor, Rollin Browne,* and *Carter T. Louthan,* on behalf of Mr. Franklin W. M. Cutcheon; Messrs. *Robert A. Littleton, John C. Altman, Abraham Lowenhaupt,* and *Stanley Waite,* on behalf of the Fred Medart Manufacturing Company et al.; Messrs. *Michael F. Gallagher* and *Samuel M. Rinaker,* on behalf of the Illinois Kaolin Company; Messrs. *Maynard Teall, William Wallace Booth, William A. Seifert,* and *Eugene B. Strassburger,* on behalf of the American Refractories Company et al.; and Messrs. *Hugh Satterlee, I. Herman Sher,* and *Albert S. Lisenby,* on behalf of the Tobacco Products Corporation, of New York.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

These cases involve the question of the effect and validity of section 611, which is to be read in connection

with section 607, of the Revenue Act of 1928 (c. 852, 45 Stat. 791, 874, 875).[1]

No. 36, *Graham et al.* v. *Goodcell*, is typical of this group of cases. On March 22, 1918, petitioners filed their partnership income and excess-profits tax returns for the year 1917 and paid the taxes thereby shown to be due. Additional taxes were assessed by the Commissioner of Internal Revenue in January, 1920. The petitioners filed a claim for the abatement of this assessment on February 11, 1920, and the Commissioner rejected the claim on December 27, 1922. Under section 250 (d) of the Revenue Act of 1921 (c. 136, 42 Stat. 227, 265), the five-year period for the collection of the taxes for 1917 expired on March 22, 1923. The Collector served notice and demand for payment on November 19, 1924, threatening distraint, and on November 29, 1924, and December 3, 1924, the petitioners paid the additional taxes under protest. On September 25, 1925, they filed a claim for refund upon the ground that the taxes were collected after the statute of limitations had run. The claim was

---

[1] These sections are as follows:

"Sec. 607. Effect of Expiration of Period of Limitation against United States. Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this Act) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim."

"Sec. 611. Collections Stayed by Claim in Abatement. If any internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after the enactment of this Act) shall not be considered as an overpayment under the provisions of section 607, relating to payments made after the expiration of the period of limitation on assessment and collection."

rejected by the Commissioner on January 13, 1926, and this suit to recover the money paid was brought on December 23, 1927, in the District Court of the United States for the Southern District of California. The judgment entered in favor of the petitioners by the District Court was reversed by the Circuit Court of Appeals for the Ninth Circuit, 35 Fed. (2d) 586. This Court granted a writ of certiorari, 281 U. S. 708.

There are variations in the other cases, but the determining features are the same. A claim in abatement was filed and collection was delayed; the collection was made after the statute of limitations had run, and before the enactment of the Act of 1928. In some of the cases, the suit to recover the amount paid was brought after, and in other cases before, the Act of 1928 became a law, on May 29, 1928. The suits were either in the Court of Claims against the United States, or in the District Courts of the United States against the Collector, either individually or officially, or in both capacities. In all these cases the decisions below were in favor of the Government [2] and writs of certiorari were issued by this Court.[3]

---

[2] Court of Claims: No. 104, *Oak Worsted Mills* v. *United States,* 36 Fed. (2d) 529, 38 Fed. (2d) 699, 68 Ct. Cls. 539; No. 105, *Taft Woolen Co.* v. *United States,* 38 F. (2d) 704, 69 Ct. Cls. 764; No. 323, *Second National Bank of Saginaw* v. *United States,* 40 Fed. (2d) 129, 69 Ct. Cls. 745; No. 337, *Boston Pressed Metal Co.* v. *United States,* 42 Fed. (2d) 312, 70 Ct. Cls. 272.

Circuit Court of Appeals for the Second Circuit: No. 463, *Reeves* v. *Anderson,* 43 Fed. (2d) 679; District Court, *sub nom. Regla Coal Co.* v. *Bowers,* 37 Fed. (2d) 373; No. 529, *Jennings* v. *Anderson,* 43 Fed. (2d) 683.

Circuit Court of Appeals for the Sixth Circuit: No. 565, *Wright & Taylor, Inc.* v. *Lucas,* 45 F. (2d) 75; District Court, 34 Fed. (2d) 328.

In No. 519, *Eastern Equities Corporation* v. *United States,* there had been no hearing in the Circuit Court of Appeals for the First Circuit when the writ of certiorari was granted; District Court, *sub nom. American Glue Co.* v. *United States,* 42 Fed. (2d) 235.

[3] 281 U. S. 708, 717; *post,* pp. —.

The contentions presented are, in substance, that sections 607 and 611 of the Revenue Act of 1928 do not apply retroactively; that their provisions are not applicable to payments made under duress; that the stay contemplated by section 611 is not a mere voluntary delay in collecting the tax; that these sections were intended to control administrative action only and not to affect judicial proceedings; that section 611 should not be construed to apply to a personal action against the Collector to recover taxes illegally collected; that section 611 was repealed by the Act of May 29, 1928, c. 901, sec. 3, 45 Stat. 986, 996; that section 250 (d) of the Revenue Act of 1921 extinguished the liability for taxes upon the expiration of the five-year period specified; that the Congress having extinguished the liability had no power under the Fifth Amendment of the Constitution to revive it; and that, if section 611 is construed to authorize the collection of the tax in the circumstances shown, it further violates the Fifth Amendment because the statute is unreasonable and arbitrary.

*First. As to the construction of the statute.* Section 607 provides that a tax assessed or paid after the expiration of the period of limitation applicable thereto shall be considered an "overpayment" and shall be credited or refunded to the taxpayer, if claim therefor is duly filed. Section 611 enacts a qualification by providing that in stated circumstances the payment of the tax shall not be considered an overpayment under the provisions of section 607. These circumstances are (a) an assessment of the tax within the time applicable thereto and before June 2, 1924, (b) the filing of a claim in abatement, (c) the stay of the collection of any part of the tax, and (d) the payment of such part of the tax before, or within one year after, the enactment of the Act of 1928.

The occasion for this legislation, and the general purpose of the Congress in enacting it, are apparent. The

Revenue Act of 1918, by section 250 (d) (c. 18, 40 Stat. 1057, 1083) provided that " no suit or proceeding " for the collection of taxes should be begun " after the expiration of five years after the date when the return was due or was made." This provision applied only to taxes assessed under that Act. Section 250 (d) of the Revenue Act of 1921 (c. 136, 42 Stat. 227, 265) prescribed the same period of limitation for collection by suit or proceeding, and the provision was made applicable to the collection of taxes both under that Act and under prior income, excess-profits, or war-profits tax Acts, the five years running from the date of the filing of the return. The Treasury Department ruled that this limitation applied only to judicial proceedings and not to collection by distraint, the common method of enforcing payment.[4] Section 1106 (a) of the Revenue Act of 1926 (c. 27, 44 Stat. 9, 113) provided that the statute of limitations should " not only operate to bar the remedy " but should " extinguish the liability," but that " no credit or refund in respect of such tax " should be allowed unless the taxpayer had " overpaid the tax." In Bowers v. New York & Albany Lighterage Company, 273 U. S. 346 (decided February 21, 1927), this Court held that the period of limitation fixed by section 250 (d) of the Revenue Act of 1921 did apply to collection by distraint proceedings. It thus appeared that many of the collections theretofore made had been barred by the statute, and suits were brought to recover the moneys paid.[5] In many cases claims in abatement had been filed and proceedings for collection had been delayed until the claims had been acted upon, and thereupon the taxes had been collected despite the fact that the statute of limitations had run. Large

[4] I. T. 1446, Cumulative Bulletin I–2, July–December, 1922, p. 218. See Stange v. United States, ante, p. 270.

[5] See Toxaway Mills v. United States, 61 Ct. Cls. 363, reversed on confession of error (March 12, 1927), 273 U. S. 781.

amounts had been paid into the Treasury in this way, and it was the purpose of the. Congress that payments made in the circumstances described in section 611 of the Revenue Act of 1928 should not be refunded.[6]

The petitioners urge that section 611, read in its relation to section 607, was intended to apply only prospectively, that is, to action to be taken by the Treasury Department on refund claims filed after the enactment of the Act. Stress is laid upon the language of section 607 that a payment made after the expiration of the period of limitation " shall be considered " an overpayment and " shall. be credited or refunded " if claim therefor " is filed." But section 611 was manifestly intended to operate retroactively according to its terms. That is, it expressly applied to internal revenue taxes which had been assessed prior to June 2, 1924, and within the period of limitation applicable to the assessment. The section

---

[6] Section 611 as it appeared in the bill introduced in the House of Representatives provided not only for the retention of the moneys paid, but also that, in similar circumstances, amounts not yet paid might be collected within a year after the new enactment. The Committee on Ways and Means in its report on the bill stated: " Sec. 611. Collections in Cases in which Claims in Abatement were filed. Prior to the enactment of the Revenue Act of 1924 it was the administrative practice to assess immediately additional taxes determined to be due. Upon the assessment, taxpayers were frequently permitted to file claims in abatement with the collector and thus delay the collection until the claim in abatement could be acted upon. If this practice had not been followed, undue hardship undoubtedly would have been imposed upon the taxpayer. It was supposed that there was no limitation upon the collection by distraint of the amount ultimately determined to be due. However, the Supreme Court has recently held in a case in which the period for assessment expired prior to the enactment of the 1924 Act, that the period for collection was limited to five years from the date on which the return was filed. Decisions upon claims in abatement are being made every day. Amounts have been paid, are being paid, by the taxpayer even though the statute of limitations may

applied to taxes, so assessed, which had been paid before the enactment of the Act of 1928, as well as to those which would be paid within one year thereafter. The provision was applicable to such payments although the period of limitation on assessment and collection had expired when the payments were made; and the provision of section 611 related to such payments only when a claim in abatement had been filed and collection had been stayed. The words of section 607 did apply to future action as to credits and refunds by requiring recognition of the right of the taxpayer, as stated in the section, to have a return of the moneys paid, but that right, under section 611, was not to exist when the payments had been made in the circumstances there described. It was the circumstances in which the tax had been paid, and not the time of filing the claim for a refund of the money, that section 611 made determinative; and it would be inconsistent with the plain

have run. Exceptionally large amounts are involved. Accordingly, it is of utmost importance to provide that the payments already made should not be refunded. In order to prevent inequality, it is also provided that the amounts not yet paid may be collected within a year after the enactment of the new Act. Your Committee appreciates the fact that this provision will probably be subjected to severe criticism by some of the taxpayers affected. However, it must be borne in mind that the provision authorizes the retention and collection only of amounts properly due, and merely withdraws the defense of the statute of limitations. If it is determined that the amount paid is in excess of the proper tax liability, computed without regard to the statute of limitations, such excess will constitute an overpayment which may be refunded or credited as in the case of any other overpayment." (70th Cong., 1st Sess., H. R. Rep. No. 2, p. 34.)

The Finance Committee of the Senate opposed the provision of section 611 (70th Cong., 1st Sess., Sen. Rep. 960, p. 42). In conference, an amendment was adopted (70th Cong., 1st Sess., H. R. Rep. No. 1882, pp. 6, 7, 22, 23), with the result that section 611 was enacted in its present form, that is, with the provision eliminated as to the collection of amounts not yet paid.

intendment of that section to say that taxpayers should be denied a refund in those circumstances only where their claims for refund were made after the enactment, but not if they had been made before. The words of section 607, if a claim for refund " is filed within the period of limitation for filing such claim," established the appropriate condition that a claim for refund should be duly filed, but do not require the construction that the scheme of the statute, which embraced the important prohibition of section 611, should be limited to those cases where claims for refund should be filed after the statute was enacted.

We are also of the opinion that the statute embraces involuntary payments. The argument of the petitioners points to the provision of section 611 which made it applicable not only to payments before the enactment but to those within one year thereafter. It is said that the latter must be voluntary payments, and that the Treasury Department so construed the statute, as the statute did not purport to authorize collections after the period of limitation had expired.[7] But the statute also applied to payments which had been made in the past. The concern of the Congress lay with the fact that payments had been made after the statute of limitations had run and with the particular situation of taxpayers where claims in abatement had been filed and the collection stayed. Section 611 was to prevent refunding the money if collection had thus been postponed. That situation existed where, after the expiration of the period of limitation, payment had been compelled, and the statute made no exception of such payments. The practice of collecting taxes by distraint, and the mistaken view of the law that the statute of limitations had not barred collection in that manner, had exposed the Treasury to demands which it was the intention of the legislation to defeat.

[7] Mimeograph 3360, July 27, 1928; Cumulative Bulletin VII–2, pp. 82, 85.

Petitioners contend that the stay to which section 611 referred was not simply a voluntary delay in enforcing payment. "Stay" is said to be a term of art, with a meaning opposed to a mere voluntary postponement of action. There would be much force in the point, if the word could be taken out of its particular setting. A "stay" compelled, rather than voluntarily granted, would be either under a judicial order or by virtue of statutory compulsion. Section 3224 of the Revised Statutes (U. S. C., Tit. 26, sec. 154) provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." See *Graham* v. *du Pont*, 262 U. S. 234, 254, 255. Statutory provisions for stay of collection were limited in application. See Revenue Act of 1918, sec. 214 (a) (12) (a); sec. 234 (a) (14) (a). *United States* v. *John Barth Co.*, 279 U. S. 370.[8] There was no mandatory stay, that is, in the absence of agreement, without bond. But section 611 expressly applies where a claim in abatement was filed "with or without bond." The word "stay" cannot therefore be taken to be limited to a mandatory stay. It is said, however, that the words "without bond" were inserted in order to include those cases where there was a contractual stay, as in cases where the Government had been protected by a deposit of money in escrow, or by a deposit in bank as a guarantee of payment, or by other forms of binding agreements, where bonds were not filed. Such cases were exceptional, and to confine the statute to such instances would be to limit it so narrowly as to ignore its apparent purpose. In the case of a taxpayer, believed to be solvent, who had filed a claim in abatement, the postponement of collection would normally

---

[8] See also Act of October 3, 1917, c. 63, sec. 205 (b), 40 Stat. 305; Revenue Act of 1924, c. 234, sec. 279 (a), 43 Stat. 300; Revenue Act of 1926, c. 27, sec. 279 (f), 44 Stat. 60; Revenue Act of 1928, c. 852, sec. 273 (f) (g) (h), 45 Stat. 855.

take place without agreement. It is urged that if the statute is applied to voluntary delays, the clause as to stay is surplusage. If so, such a construction would be preferable to one that would make the statute virtually inoperative. But the clause is not inappropriate, as it is descriptive of the situation which followed the filing of the claim in abatement. It is true that the statutes and regulations relating to the filing of such claims did not require that there must be a postponement of collection pending decision. The collector was still put to his duty of due diligence, but he had authority to postpone the collection pending the determination of the claim, unless he believed that such action would jeopardize the ultimate recovery.[9] Such postponement, on the assumption that the statute or regulations did not bar proceedings for collection by distraint, created the situation to which section 611 was directed. The view that the word "stay" was intended to embrace this voluntary delay is supported by the statements in the reports of the committees in the House of Representatives and the Senate.[10]

In most of the cases now under review, it appears that the claim in abatement was rejected after the expiration of the period of limitation for collection. In No. 36, *Graham* v. *Goodcell,* however, the claim in abatement was rejected in December, 1922, and the period of limitation did not expire until March, 1923. It is urged that, for this reason, that case falls outside the purview of section 611. The statute makes no such exception, and we are not warranted in implying one. The claim in abatement had been filed and was pending for nearly three years.

[9] R. S., section 3220; Treasury Department Regulations No. 14, Revised, p. 14; Regulations No. 33, Art. 261; Regulations No. 45, Art. 1032; Regulations No. 62, Art. 1032; Regulations No. 65, Art. 1281.

[10] See Note 6, *supra.*

There is room for the inference that, had it not been for this delay, the tax would have been collected before the statute ran. The tax was collected later and the statute, by its terms, is applicable.

It is further insisted on behalf of the petitioners that sections 607 and 611 relate solely to administrative action and not to judicial proceedings. In support of this argument, an elaborate analysis of the revenue acts is presented in order to establish the meaning of the statutory words " credit and refunds" and " overpayment " and the aptness of their reference to administrative proceedings. It is not necessary to review this analysis, for there can be no doubt that these words do have appropriate reference to action in the course of administration. But it does not follow that by the use of these words the statute is limited to such action. There is no basis for the suggestion that there were questions involved of such a character as to make it appropriate to submit them to the exclusive judgment of the Commissioner.[11] The question was not as to the merits of the tax but simply as to the existence of certain facts of time and procedure. These facts were matters of record, easily ascertained and definite in character. It would be anomalous that the right of the taxpayer to obtain a refund from the Department, to which he was under obligation to resort (R. S. 3226, U. S. C. Tit. 26, sec. 156), should be denied, while the right to recover by suit the same amount under exactly the same circumstances should remain unaffected. In the attempt to explain this anomaly, it is said that the provision was inserted because of a distrust of administrative refunds.[12] But section 611 contains no exception

[11] Compare *Fong Yue Ting* v. *United States,* 149 U. S. 698, 714, 715; *United States* v. *Babcock,* 250 U. S. 328, 331; *Ex parte Bakelite Corporation,* 279 U. S. 438, 452.

[12] See Revenue Act of 1928, sec. 710, 45 Stat., p. 882.

as to judicial proceedings, and its prohibition is one which can be enforced appropriately by the courts when the taxpayer demands relief by suit. We are brought back to the fundamental purpose of the statute, and we are unable to conclude that it established one rule for the Department and another for the courts. We think that it was intended to prevent refunds in the circumstances stated and not merely a particular way of getting the money from the Treasury; that the effect of the provision was to deny a right to recover the amount paid and that the provision governs equally wherever the right is asserted.

In this view, it is not material whether the suit was brought by the taxpayer before or after section 611 was enacted. The validity of the statute with respect to its effect upon existing causes of action is a distinct question. So far as the construction of the statute is concerned, it is apparent that the mere pendency of the suit was not made a criterion of the right to recover. Nor is there any warrant for making a distinction in this respect between suits which had been brought against the collector individually and those pending against the United States.

There is also a contention that section 611 does not apply when the tax was paid by the credit of the amount of an overpayment for another taxable year. But the application of a credit against an assessment at a time when collection was barred must be regarded as an erroneous collection, and we see no reason for taking such a case out of the statute.

*Second. As to the question of repeal.* It is insisted that section 611 was repealed on the same day that it was enacted. This effect is ascribed to section 3 of the Act of May 29, 1928, c. 901, 45 Stat. 986, 996. That section amended section 3220 of the Revised Statutes which contained provisions as to the refunding of taxes erroneously or illegally collected. Section 3220 had been amended

by section 1111 of the Revenue Act of 1926 (44 Stat. 115) so as to except the cases provided for in sections 284 and 319 of the latter Act, which placed limitations on credits and refunds. Section 619 (b) of the Revenue Act of 1928 (45 Stat. 878) amended section 3220 by striking out this exception and inserting in lieu thereof " except as otherwise provided by law in the case of income, war-profits, excess-profits, estate and gift taxes." The amendment made by section 3 of chapter 901, Act of May 29, 1928 (45 Stat. 996), omitted this exception, and hence, it is contended, repealed section 611 of the Revenue Act of 1928. The Revenue Act was approved May 29, 1928, 8 A. M. (45 Stat. 883). The hour of the approval of chapter 901 of the same date does not appear. Section 3 of the latter Act does not expressly repeal section 611 of the Revenue Act of 1928, and the question is whether there is repeal by implication. The familiar principle that repeal will not be implied unless there is a positive repugnancy between the provisions of the new law and those of the old, has most appropriate application, as stated by Mr. Justice Story, to the interpretation of laws for the collection of revenue (*Wood* v. *United States,* 16 Pet. 342, 363), and the presumption against such an intention to repeal is strongest when the two acts are passed not only at the same session but on the same day. *Beals* v. *Hale,* 4 How. 37, 53; *Rodgers* v. *United States,* 185 U. S. 83, 89.[13] In the present instance, there is no irreconcilable

[13] See also, *Smith* v. *The People,* 47 N. Y. 330, 339; *City of Birmingham* v. *Southern Express Co.,* 164 Ala. 529, 538; *McFarland* v. *The Bank,* 4 Ark. 410, 417; *Thompson* v. *Board of Supervisors,* 111 Cal. 553, 556; *Hope* v. *The Mayor,* 72 Ga. 246, 251; *Hutchinson* v. *Self,* 153 Ill. 542, 549, 550; *Shank* v. *State,* 183 Ind. 298, 302; *Eckerson* v. *City of Des Moines,* 137 Iowa 452, 489; *Mayor* v. *German-American Fire Insurance Co.,* 132 Md. 380, 385; *Commonwealth* v. *Huntley,* 156 Mass. 236, 239; *State* v. *Archibald,* 43 Minn. 328, 330, 331; *Walser* v. *Jordan,* 124 N. C. 683, 687, 688; *Commonwealth* v. *City of Pottsville,* 246 Pa. 468; *Town School District* v. *School District No. 2,* 72 Vt. 451, 454, 455.

conflict between the two provisions. Section 611 established a special rule for a particular situation in order to embody a policy deliberately adopted by the Congress, and there is no ground for concluding that contemporaneously with that enactment the policy was abandoned and the enactment repealed. *Rodgers v. United States, supra; Washington v. Miller,* 235 U. S. 422, 428.

*Third. As to the validity of section 611.* This is not a case of an attempt retroactively to create a liability in relation to a transaction as to which no liability had previously attached.[14] There is no question here as to the original liability of the taxpayers. The tax was a valid one, and the fact that the taxpayers had been indebted to the Government for the amount which was subsequently collected is not now open to dispute. Delay in collection had followed upon the taxpayers' request for a consideration of their claim that the tax should be abated, and, in the mistaken belief on the part of the administrative authorities that the statute of limitations did not bar collection by the appropriate proceeding of distraint, the delay had been continued until after the statute had run. On the discovery of the mistake, as pointed out by the decision of this Court, the Congress sought to prevent a refund of the amount thus collected. The question is whether these circumstances remove the case from the operation of the general rule that it is not consistent with due process to take away from a private party a right to recover the amount that is due when the act is passed. *Steamship Company v. Joliffe,* 2 Wall. 450, 457, 458; *Ettor v. Tacoma,* 228 U. S. 148, 156; *Forbes Boat Line v. Board of Commissioners,* 258 U. S. 338, 340.

---

[14] See *Nichols v. Coolidge,* 274 U. S. 531; *Blodgett v. Holden,* 275 U. S. 142; *Untermyer v. Anderson,* 276 U. S. 440; *Cooper v. United States,* 280 U. S. 409, 412. Compare *Stockdale v. Insurance Companies,* 20 Wall. 323, 331; *Wagner v. Baltimore,* 239 U. S. 207, 216, 217; *Forbes Boat Line v. Board of Commissioners,* 258 U. S. 338, 339.

This rule is well illustrated by the case of *Forbes Boat Line* v. *Board of Commissioners, supra,* where the suit was brought to recover tolls unlawfully collected for passage through the lock of a State canal. The passage was free under the law as it stood at the time, and the subsequent legislation of the State which attempted to validate the illegal collection was held to be in violation of the Fourteenth Amendment. The Court said that the legislature in 1919 could not compel plaintiff to pay for a passage made in 1917 without promise of reward " any more effectively than it could have made a man pay a baker for a gratuitous deposit of rolls." But while the legislature could not in such a case retroactively create a liability, the court recognized that there is a class of cases in which defects in the administration of the law may be cured by subsequent legislation without encroaching upon constitutional right, although existing causes of action may thus be defeated.

In *United States* v. *Heinszen & Company,* 206 U. S. 370, it appeared that after the Philippine Islands had come under the military control of the United States, the President had issued an order establishing a system of tariff duties which were levied on goods coming into the Islands whether from the United States or other countries. The tariff was in force when the treaty of peace was ratified and was subsequently continued, with modifications. The President, as commander-in-chief, had authority to impose tariff duties prior to the ratification of the treaty, but not thereafter.[15] Accordingly, those who had been compelled to pay such duties after the ratification, and before the Congress established the tariff, were entitled to recover the amounts paid.[16] Subsequently, the Con-

[15] See *De Lima* v. *Bidwell,* 182 U. S. 1; *Dooley* v. *United States,* 182 U. S. 222; *Dooley* v. *United States,* 183 U. S. 151; *Fourteen Diamond Rings* v. *United States,* 183 U. S. 176.

[16] *Lincoln* v. *United States; Warner, Barnes and Company, Limited,* v. *United States,* 197 U. S. 419; 202 U. S. 484.

gress passed an act purporting to ratify and confirm the collection of such duties. This Court upheld the statute, as against the claim under the Fifth Amendment, stating that the contention ignored the fact that when the goods were brought into the Philippine Islands, there was a tariff in existence under which duties were exacted in the name of the United States, and that Congress had power to ratify the collection. With respect to the effect of the act of Congress upon existing causes of action, the Court observed (*id.* p. 387) that "the mere commencement of the suit did not change the nature of the right" or "operate to deprive the government of the power to enact curative statutes, which, if the actions had not been brought, would have been unquestionably valid."

Another illustration is found in *Tiaco* v. *Forbes,* 228 U. S. 549. Suits had been brought to make the Governor General of the Philippine Islands personally answerable in damages for the deportation of a Chinese person resident in the Philippines, and after the bringing of the suit the Philippine legislature had passed an act purporting to ratify the Governor General's action. Referring to the doubt that naturally would occur whether, if a right of action had vested previously, it could be taken away by such a statute, the court said that "it generally is recognized that in cases like the present, where the act originally purports to be done in the name and by the authority of the state, a defect in that authority may be cured by a subsequent adoption of the act."

The doctrine of the *Heinszen* case, *supra,* was left unquestioned in *MacLeod* v. *United States,* 229 U. S. 416, 434, 435 (where the application of the Act of Congress with respect to Philippine duties was limited so as to carry out its true intent) and was definitely applied in the case of *Rafferty* v. *Smith, Bell & Company, Limited,* 257 U. S. 226, 232. Taxes on the value of exports from the Philippine Islands had been collected under a Philip-

pine act while duties on such exports were forbidden by an act of Congress. The taxpayers had recovered judgments for restitution in March, 1920. The Congress, by Act of June 5, 1920 (c. 253, 41 Stat. 1015, 1025), confirmed the collections. The Court held that the enactment was within the power of Congress, and the fact that the taxpayers had recovered judgments for the amounts collected gave them no higher rights than those possessed by the taxpayers in the *Heinszen* case. See also, *Charlotte Harbor & Northern Railway Company* v. *Welles,* 260 U. S. 8, 11, 12; *Hodges* v. *Snyder,* 261 U. S. 600, 603, 604. In *Forbes Boat Line* v. *Board of Commissioners, supra,* the *Heinszen* and *Rafferty* cases were invoked without success; the court expressed the view that " a tax may be imposed in respect of past benefits " and that in those cases the principle of ratification was not necessarily involved, citing *Wagner* v. *Baltimore,* 239 U. S. 207, 216, 217, and *Stockdale* v. *Atlantic Insurance Company,* 20 Wall. 323.

It is apparent, as the result of the decisions, that a distinction is made between a bare attempt of the legislature retroactively to create liabilities for transactions which, fully consummated in the past, are deemed to leave no ground for legislative intervention, and the case of a curative statute aptly designed to remedy mistakes and defects in the administration of government where the remedy can be applied without injustice. Where the asserted vested right, not being linked to any substantial equity, arises from the mistake of officers purporting to administer the law in the name of the Government, the legislature is not prevented from curing the defect in administration simply because the effect may be to destroy causes of action which would otherwise exist.[17] " The

[17] In *United States* v. *Heinszen & Co.,* 206 U. S. 370, 386, 387, this Court said: " But if it be conceded that the claim to a return of the moneys paid in discharge of the exacted duties was in a sense a vested right, it in principle, as we have already observed, would be

power is necessary, that government may not be defeated by omissions or inaccuracies in the exercise of functions necessary to its administration." *Charlotte Harbor & Northern Railway Company* v. *Welles, supra.* This principle covers the present case. The petitioners had been indebted to the Government for the amount which was subsequently collected. They had asked for a review of the assessment and collection was postponed. The Treasury Department had mistakenly assumed that the statute of limitations did not apply to distraint proceedings and before the mistake was discovered the period of limitation had expired. The Congress could correct this defect in administration without violating any substantial equity, and this was accomplished by section 611 of the Revenue Act of 1928.

Having reached this conclusion, it is not necessary to consider the authority of the Congress to withdraw the consent of the United States to be sued. See *United States* v. *Heinszen & Company, supra,* at p. 391. The argument of the Government in this respect is not adequate to dispose of the controversy. Some of the present suits were brought against the collector individually and were based upon the right to recover as against him by reason of his illegal acts. Such an action is personal and not against the United States. *Sage* v. *United States,* 250 U. S. 33, 37; *Smietanka* v. *Indiana Steel Company,*

but the character of right referred to by Kent in his Commentaries, where, in treating of the validity of statutes retroactively operating on certain classes of rights, it is said (Vol. 2, pp. 415, 416): ' The legal rights affected in those cases by the statutes were deemed to have been vested subject to the equity existing against them, and which the statutes recognized and enforced. *Goshen* v. *Stonington,* 4 Connecticut 209; *Wilkinson* v. *Leland,* 2 Peters, 627; *Langdon* v. *Strong,* 2 Vermont, 234; *Watson* v. *Mercer,* 8 Peters, 88; 3 Story's Comm. on the Constitution, 267.' "

257 U. S. 1, 4, 5.[18] If the Congress did not have the authority to deal by a curative statute with the taxpayers' asserted substantive right, in the circumstances described, it could not be concluded that the Congress could accomplish the same result by denying to the taxpayers all remedy both as against the United States and also as against the one who committed the wrong. See *Brinkerhoff-Faris Trust & Savings Company* v. *Hill,* 281 U. S. 673, 679, 680.

The objection to section 611 upon the ground that it is arbitrary and capricious in its classification, and hence offends. the Fifth Amendment, is without merit. The broad discretion of the Congress in the exercise of its constitutional power as to taxation (*Brushaber* v. *Union Pacific Railroad Company,* 240 U. S. 1, 24–26; *Evans* v. *Gore,* 253 U. S. 245, 256; *Barclay & Company* v. *Edwards,* 267 U. S. 442, 450) necessarily extends to the whole field

---

[18] "As the law stood before later statutes a collector was liable personally for duties mistakenly collected, if the person charged gave notice, at the time, of his intention to sue, and warning not to pay over the amount to the Treasury. *Elliott* v. *Swartwout,* 10 Pet. 137. But, after an act of Congress had required collectors to pay over such monies, it was held, against the dissent of Mr. Justice Story, that the personal liability was gone. *Cary* v. *Curtis,* 3 How. 236. Later statutes however recognize suits against collectors in such cases, and the plaintiff contends that they should be construed to create a new statutory liability attached to the office and passing to successors, as was held in this case, the formal defendant being saved from harm by the United States. This however is not the language of the statutes and hardly can be reconciled with the decision of this Court in *Sage* v. *United States,* 250 U. S. 33, and other cases to which we shall refer. . . . In *Patton* v. *Brady,* 184 U. S. 608, a suit against a collector begun after the passage of this statute, it was held that it could be revived against his executrix, which shows again that the action is personal, as also does the fact that the collector may be held liable for interest." *Smietanka* v. *Indiana Steel Co.,* 257 U. S. 1, 4, 5.

of supervision and control of the processes of enforcement. It cannot be deemed to be unreasonable that the Congress in the present instance provided for cases in which a claim in abatement had been filed and the collection stayed. In its selection the Congress dealt with an appropriate class and was not bound to include others. Nor is the statute rendered invalid by the provision as to payments made within a year after its enactment. As already stated, the Treasury Department did not construe section 611 as authorizing collections in the future, after the expiration of the period of limitation;[19] and if the Congress saw fit to make the statute applicable to future voluntary payments, it was clearly entitled to fix a limit of time within which it might be so applied.

In some of the cases under review, it is insisted that section 611 does not preclude the recovery of interest, upon the ground that the interest had not been assessed and therefore lay outside the prohibition of the statute. But it does not appear that there was any statutory requirement that interest as such should be assessed, and the valid denial of the right to recover the principal should be deemed to apply also to the interest.

*Judgments affirmed.*