**SIMMONS MFG. CO. v. ROUTZAHN,**
Collector of Internal Revenue.

No. 6011.

Circuit Court of Appeals, Sixth Circuit.

Jan. 16, 1933.

H. D. Palmer, of Cleveland, Ohio (Griswold, Green, Palmer & Kapp, of Cleveland, Ohio, on the brief), for appellant.

J. B. Osmun, of Cleveland, Ohio (Wilfred J. Mahon, of Cleveland, Ohio, and C. M. Charest and Henry L. Young, both of Washington, D. C., on the brief), for appellee.

Before MOORMAN, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

Appellant, a taxpayer, sued at law for the recovery of income, and profit taxes, and, from judgment in favor of the collector, appeals.

The question presented arises from the following facts: Additional income and profit taxes for 1918 were assessed against the taxpayer on March 19, 1924, within the statutory time therefor. A claim for abatement was filed, and on November 19, 1924, rejected. On February 16, 1925, the collector issued a warrant of distraint, but on the taxpayer's promise to furnish a bond refrained from serving it, whereupon the taxpayer, in April, 1925, gave a surety bond running to the collector, reciting the filing of the claim for abatement, and conditioned upon the payment of "such portion of the tax as may be found due and payable"; the taxpayer contending, however, that on the merits of the case no tax was due or payable. The completed return having been filed June 15, 1919, the bond was given after the applicable five-year period of limitation had run. The Revenue Act of 1928 became effective May 29, 1928. Section 607 thereof (26 USCA § 2607) classified as overpayments taxes assessed or paid after the expiration of the period of limitation properly applicable, while section 611 (26 USCA § 2611) made an important exception there-

to. The two sections are printed in the margin.[1] On October 19, 1929, and more than one year after the enactment of the 1928 act, another warrant of distraint was issued by the collector, and under its authority the disputed taxes were collected October 21, 1929. Claim for refund seasonably filed was denied. The suit in the District Court against the collector followed. Is the taxpayer prevented from recovering the collection by the giving of the bond?

The taxpayer contends that the collection is a recoverable overpayment within the provisions of section 607, supra; that, even though a claim for abatement was filed, the collection is not within the exception of section 611 because made after one year from the passage of the act; that the bond was not a waiver; that no contractual obligation resulted from it because there was no tax liability at the time it was given, and therefore no consideration to sustain it; that, if the taxpayer had paid the tax instead of giving bond, it could have recovered it back, wherefore the bond can be given no greater effect as a defense than actual payment; that there was no acknowledgment of indebtedness; that there was no subsequent finding of a tax due; and that the bond was given under duress.

The solution of the problem before us is not unattended with difficulty. The precise question has never been answered by the Supreme Court of the United States. It appeared in the cases of Mascot Oil Company, Inc., v. United States (Heiner, Collector, v. Erie Coal & Coke Co.), 282 U. S. 434, 51 S. Ct. 196, 75 L. Ed. 444. In the Mascot Case, the taxpayer made a deposit in escrow

with a bank to cover the amount of the tax, but, when the collector demanded payment, it was made by the taxpayer under protest and not from the deposit. In the Heiner Case a bond had been given to secure payment of the tax. The making of the deposit in the former case, and the giving of the bond in the latter, were after the applicable statute of limitations had run, and in each case the taxpayer insisted that the statute had not thereby been waived. The question of waiver was, however, laid aside in both cases because of the circumstance that the collections had been made prior to the passage of the 1928 act, or within one year thereafter, and in consequence the taxpayers were not protected from the operation of section 611 of that act. This, in conformity with the decision in Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 192, 75 L. Ed. 415, decided the same day. In the recent case of Gulf States Steel Co. v. United States, 53 S. Ct. 69, 77 L. Ed. ——, decided November 7, 1932, the bond sued upon was given after the period of limitation, but, as it continued the protection afforded by two previous bonds, the first having been given within the period, it is also not decisive. We are therefore left to rely upon reason and analogy rather than upon precedent for the solution of the problem that confronts us.

In United States v. John Barth Co., 279 U. S. 370, 49 S. Ct. 366, 368, 73 L. Ed. 743, the suit was by the United States upon a bond to stay collection given prior to the running of the statute. It was there held that the making of the bond gave the United States a cause of action separate and distinct from an action to collect taxes which it already had, and that the statutes pleaded in bar could not be extended by implication to a suit upon a subsequent and substituted contract. It was also held that, by securing postponement of the collection of the taxes returned, the taxpayer waived the statutory limitation of five years that would have applied had the voluntary return of the taxpayer stood and no bond been given. This was on the ground that the object of the bond was not only to prevent the immediate collection of the tax, but also to prevent the running of time against the government, and it was said: "The taxpayer has obtained his object by the use of the bond, and he should not object to making good the contract by which he obtained the delay he sought." In considering the John Barth Case, it must be noted that suit there was on the bond, and not for collection of taxes as such. In the instant case suit is not brought upon the

---

[1] Section 607: "Effect of Expiration of Period of Limitation against United States

"Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after May 29, 1928 [the enactment of this Act]) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim." U. S. C. Sup. III, Title 26, § 2607 (26 USCA § 2607).

Section 611: "Collections Stayed by Claim in Abatement

"If any internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after May 29, 1928 [the enactment of this Act]) shall not be considered as an overpayment under the provisions of section 2607 [607], relating to payments made after the expiration of the period of limitation on assessment and collection." U. S. C. Sup. III, Title 26, § 2611 (26 USCA § 2611).

bond; the taxes having been already collected by distraint. The suit is to recover taxes so collected, and the defense relied upon is the taxpayer's obligation under the bond. The difference, therefore, is in our view not material. There is merely a reversal of parties, and, instead of the United States suing upon the bond, it here asserts the bond as a defense.

If the ruling of the Barth Case is not here to be applied, its denial as authority must be based, not only upon distinguishing circumstances, but upon circumstances which require the application of different principles. The one distinguishing circumstance that seems to be important is the fact that the bond in the Barth Case was given before the running of the statute, and the bond with which we are here concerned was given after the statute had run, and this distinction is urged upon us as conclusive by reason of the fact that in the Barth Case the collector refrained from making a collection which he had authority to make, while here the collector had no authority to make the collection. The tax therefore could have been recovered back, and there was no consideration for the bond.

■ Evaluation of the above contention necessitates a consideration of the state of the law with respect to the remedies available to the collector at the time the bond was given. The statute applicable to the collection here sought to be recovered is the Revenue Act of 1921. Section 250 (d) of that act (42 Stat. 264) provided that no suit or proceeding for the collection of taxes due thereunder should be begun after the expiration of five years after the date when the return was filed. By reason of the decision of the Court of Claims in Toxaway Mills v. United States, 61 Ct. Cl. 363, it was thought that the period of limitation contained in the 1921 act barred collection by suit only, but did not bar collection by distraint proceedings. It was not until the decision of the Supreme Court in Bowers, Collector, v. New York & Albany Lighterage Company, 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, decided February 21, 1927, that it was known that the holding of the Court of Claims in the Toxaway Case was erroneous. In the meanwhile, collectors everywhere were enforcing collection of taxes in distraint proceedings after the five-year period of limitation had expired. It was under such circumstances that the warrant in the instant case issued, and the bond was given. There is nothing in the record to indicate bad faith on the part of the collector, and it is to be assumed that he was acting under authority thought by him to be possessed. Nor is there anything in the record to indicate that the taxpayer did not have the same understanding of the law. It was to delay immediate collection by distraint that the bond was given. The taxpayer was relieved of immediate payment, and had attained the object noted in the Barth Case by the use of the bond. We cannot think that under these circumstances there was not sufficient or adequate consideration for that instrument.

■ Other considerations contribute to this view. The taxpayer had filed a claim for abatement. It is true that it had already been rejected, but the bond recited the filing of the claim, and it seems logical to infer from such recital that the taxpayer intended to pursue its claim by petition for rehearing or some other appropriate remedy. The giving of the bond secured for it both opportunity and time to do so. Besides, there is nothing sacrosanct in a period of limitation granted by the United States in a taxing statute. United States v. Southern Lumber Company, 51 F.(2d) 956 (C. C. A. 8). It confers no vested right, and can be repealed without denial of due process, Graham & Foster v. Goodcell, supra, and such repeal may be made operative retroactively, Mascot Oil Co. v. United States, supra. We think, in view of what we have said, that the bond was a contract substituted for the tax obligation within the reasoning of the Barth Case. It is true that the court noted that the bond therein considered was given well within the period of limitation, but we are unable to see that this circumstance was particularly relied upon as a basis for decision. Nor do we conclude that section 250 (d) of the 1921 act, as construed in the Bowers Case, operated to extinguish liability for the assessed tax. Congress undertook to do that by section 1106 (a) of the Revenue Act of 1926 (26 USCA § 1249, note), printed in the margin,[2] but repealed the section as of the date of its enactment by section 612 of the Revenue Act of 1928 (45 Stat. 875). The necessary implication from both the enactment and repeal of section 1106 (a), in spite

[2] Section 1106 (a): "The bar of the statute of limitations against the United States in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability; but no credit or refund in respect of such tax shall be allowed unless the taxpayer has overpaid the tax. The bar of the statute of limitations against the taxpayer in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability; but no collection in respect of such tax shall be made unless the taxpayer has underpaid the tax." U. S. C., App., Title 26, § 1249 (26 USCA § 1249 note).

of some apparent dicta contra, is that the period of limitation neither in acts prior to nor subsequent to the act of 1926 extinguished the tax debt, however it may have barred collection or warranted recovery by the taxpayer as an overpayment.

But, aside from the contractual obligation created by the bond, we think the bond constituted a waiver of the period of limitation, not, perhaps, the express or technical waiver provided for by the so-called consent clause (section 250 (d), of the 1921 act, but at least an implied waiver. In the Barth Case it was held that a bond given to stay collection prior to the running of the statute is a waiver. In Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335, it was held that a waiver is operative, even though given after the period of limitation has expired, and this on analogy to the rule that private debts barred by the statute of limitations may be effectively revived after the bar has fallen by a new promise without new consideration (citing Williston, Contracts, §§ 160 to 184), and also upon the assumption that an effective and not a futile act was intended. See, also, Aiken v. Burnet, 282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. 339; Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349, and Florsheim Bros. Drygoods Co. v. United States, 280 U. S. 453, 466, 50 S. Ct. 215, 74 L. Ed. 542. But, whether we consider the bond as a waiver or as a substituted contract, the result, so far as the taxpayer here is concerned, is the same.

Some further consideration should perhaps be given to the argument that a payment which can be recovered back is not payment of a debt, and that the bond therefore can be given no greater effect as a defense than actual payment. The statement, however, that the tax, if paid, could have been recovered, is only qualifiedly true. In the hypothetical case suggested the payment could have been recovered only if the taxpayer could have expeditiously pursued his administrative remedy, have promptly thereafter sued for recovery, and have obtained judgment before the effective date of the 1928 act. Failing in this, a claim for abatement having been filed, the collection would have come within the ambit of section 611 of the 1928 act, and recovery would have been barred. It is, of course, idle to speculate upon what might have been done, but which in fact was not done, yet it is not without interest to note that in Graham & Foster v. Goodcell, supra, wherein sections 607 and 611, supra, were construed, payments were

made in November and December, 1924, and suit to recover them back was still pending when the 1928 act took effect. The bond in the instant case was not given until April 20, 1925. Aside from this, the argument, while not tenable as demonstrating absence of consideration for the bond, does possess a seeming plausibility as an assertion of equitable right based upon a concept of natural justice. Even this seeming plausibility is, however, destroyed when we come to consider the fact that the taxpayer had filed a claim for abatement, and the effect given to such circumstance by the Congress in the enactment of section 611 of the 1928 act and the Supreme Court in sustaining its validity. The abatement claim undoubtedly caused the collector to delay collection until the statute had run. Granted that the stay was not mandatory, and that the collector was still under a duty to collect as noted in the Goodcell Case, yet the practical effect of the claim was to delay collection, and the bond assured as it actually brought about an additional period for consideration and payment. But for the bond, the collector could have made collection before the 1928 act became effective. That such result was neither inequitable nor a denial of due process, under Graham & Foster v. Goodcell, supra, has already been pointed out. The reason is thus expressed by the court: "Delay in collection had followed upon the taxpayers' request for a consideration of their claim that the tax should be abated, and, in the mistaken belief on the part of the administrative authorities that the statute of limitations did not bar collection by the appropriate proceeding of distraint, the delay had been continued until after the statute had run. On the discovery of the mistake, as pointed out by the decision of this Court [the Bowers Case], the Congress sought to prevent a refund of the amount thus collected." And again, referring to the case of Forbes Pioneer Boat Line v. Board of Commissioners, 258 U. S. 338, 42 S. Ct. 325, 66 L. Ed. 647, it was said: "But while the legislature could not in such a case retroactively create a liability, the court recognized that there is a class of cases in which defects in the administration of the law may be cured by subsequent legislation without encroaching upon constitutional right."

We see no merit in the contention that, since the bond was conditioned upon subsequent finding of a tax due, and no such finding was made, the promise to pay was not enforceable. The assessment had already been made, the tax had been found to be due,

and the claim for abatement had been rejected. In so far as it may have been the intention of the taxpayer to file a petition for rehearing that would result in a subsequent finding, the record is silent as to what, if anything, was done. The taxpayer cannot by his own conduct defeat a subsequent finding and then deny liability on a promise to pay because no such subsequent finding had been made. Nor is there any merit to the claim that the bond was obtained by duress. The collector in good faith thought he could execute a warrant of distraint. He endeavored to do so. In the then state of the law, such distraint was thought to be legal and within the authority of the collector. There is no showing contra. Besides, the taxpayer was not constrained to furnish the bond. It could have paid the tax, and then sued to recover it back. There was no duress. See Burnet v. Chicago Railway Equipment Co., supra.

The judgment below is affirmed.