## DETROIT TRUST CO. v. WOODWORTH, Collector of Internal Revenue.
### No. 8101.

Circuit Court of Appeals, Sixth Circuit.
March 14, 1940.

Charles F. Delbridge and Francis W. McCauley, both of Detroit, Mich., for appellant.

Maurice J. Mahoney, Sp.Asst. to Atty. Gen. (Sewall Key and George H. Zeutzius, Sp. Assts. to Atty. Gen., and John C. Lehr and J. Thomas Smith, both of Detroit, Mich., on the brief), for appellee.

Before ALLEN, HAMILTON, and ARANT, Circuit Judges.

ALLEN, Circuit Judge.

This action was instituted on August 2, 1929, by appellant as executor, for refund of amounts alleged to have been illegally assessed and paid under protest on behalf of appellant's decedent as additional income taxes and interest for the year 1917. The District Court dismissed the action.

The case arises out of the following facts:

On December 1, 1922, the Commissioner of Internal Revenue assessed an additional income tax of $1,946,617.62 with respect to decedent's income for 1917, and on April 26, 1923, filed notices of tax lien covering the assessment with the register of deeds for Wayne County, Michigan, and the clerk of the United States District Court at Detroit. Appellant filed a claim in abatement and the Commissioner, on September 21, 1923, reduced the additional assessment to $583,410.44 and determined that this amount, together with the original tax of $21,175.27, represented decedent's total correct tax liability for 1917. Collection had been postponed during the abatement proceedings and after a certificate of over-assessment had been made and notice of the amount finally determined had been given, the Collector demanded the immediate payment of the taxes and threatened to enforce the tax lien. Appellant desired to delay payment of the tax, and conferred with the Commissioner, proposing to pay $183,410.44 and to protect the Commissioner by giving a bond conditioned upon the staying of the collection of $400,000, in order that appellant might have an opportunity to test the validity of the assessment. On September 5, 1924, appellant paid $183,410.44 to appellee, and on September 16, 1924, filed a claim for refund therefor, and requested that it be promptly acted upon and that collection of the balance be suspended or stayed pending judicial determination of the tax liability on appellant's giving satisfactory assurance of ultimate payment. As a result of the negotiations and of appellee's representations of hardship, collection of the $400,000 was stayed and appellant on December 23, 1924, executed a bond, which was accepted. The material parts of the bond are printed in the margin.[1]

Appellee, on January 25, 1925, issued certificates discharging the tax liens previous-

[1] "Know all men by these presents, that Security Trust Company is held and firmly bound unto Fred L. Woodworth, Collector of Internal Revenue for the First District of Michigan, in its capacity as Executor of the Last Will and Testament of Cornelia O. Curtis, deceased, for the payment of the sums hereinafter mentioned and in its own proper corporate capacity for the performance of the obligation hereinafter undertaken in such capacity, for which payment and performance the said obligor binds itself, its successors and assigns in said respective capacities firmly by these presents:

"Whereas, there has been assessed against the above named obligor certain additional Income Taxes resulting from a deficiency in tax (not due to negligence or to fraud with intent to evade tax) against the Deceased, and

"Whereas, the said obligor has paid on account thereof the sum of $183,410.44 and has filed claim for refund of the said sum so paid because of claimed invalidity of said assessment, and

"Whereas, to exact payment of the balance of deficiency in tax, said balance being $400,000.00, at this time will result in undue hardship to the obligor;

"Now therefore, the obligation hereof is that the obligor in its representative capacity aforesaid shall diligently prosecute the claim of refund filed with the above named Collector on September 16, 1924, and if the same shall be denied by the Commissioner of Internal Revenue, it shall promptly institute and diligently prosecute judicial proceedings for the determination of the questions raised against the validity of said assessment, and on the final termination of said judicial proceedings or upon failure to prosecute the same through final termination or on failure (if said claim of refund shall be denied) to institute any such proceedings, the obligor shall promptly pay all sums payable on account of said assessment to the extent that said assessment shall not have been determined to be without authority of law (together with any interest thereon or other charge in connection therewith which may have accrued in law) and as a condition of the acceptance hereof shall pay interest at the rate of six per cent per annum from the date hereof on the amount of principal of tax so payable hereunder, and the obligor in its own proper corporate capacity represents that it now has and undertakes and guarantees that it will retain in its possession or under its control in its said representative capacity assets ample to satisfy and discharge all liability under said assessment as now made, so long as any liability hereunder shall continue, and will apply such assets to the satisfaction and discharge of said liability, and in the event of an insufficiency of such assets at such time to fully satisfy and discharge said liability, the said obligor in its own proper corporate capacity and out of its own proper corporate assets shall pay any sum necessary for the full satisfaction and discharge of said liability."

ly recorded, and certifying that the taxes theretofore assessed had been paid in full and that the lien was discharged.

The Commissioner, by letter dated August 17, 1925, advised appellant that its claim for refund would be rejected, and entered final rejection on October 12, 1925. Appellee requested information as to institution of the judicial proceedings, but none was instituted. In March, 1928, appellee demanded payment under the terms of the bond, which was made by appellant paying the Collector $400,000 plus $81,380.82 interest, and the bond was stamped paid, May 15, 1928. Appellant thereafter filed a claim for refund for $183,410.44, dated August 2, 1928, and one for refund of $481,380.82 on December 28, 1928.

The material findings of fact upon which the District Court based its dismissal of the action are printed in the margin. [2]

The court made the following conclusions of law:

"1. The bond was a valid, binding contract which was substituted for the remaining unpaid $400,000 of the tax assessment.

"2. By the terms of the bond, plaintiff's claim for refund filed September 16, 1924, was expressly made part of the subject matter therof and, read together, constituted an election by plaintiff to limit its right to contest the entire deficiency assessment to the manner and method outlined and agreed to therein.

"3. The bond taken in connection with the claim for refund filed September 16, 1924, as part of the subject matter thereof, and the subsequent events set forth in the findings above with respect thereto, constitute an effective, bar to the maintenance by plaintiff of the instant action. * * *"

■ No bill of exceptions was filed, and we therefore consider only the sufficiency of the facts found to support the judgment.

■ We think that the court erred in holding that the action was barred under the statute of limitations. While the filing of the claim for refund is a prerequisite to this action (26 U.S.C.A.Int.Rev.Code, § 3772(a) (1, 2), (b), claim was duly made, and the suit was brought within the statutory period of five years. All three claims

<hr/>

[2] "15. Plaintiff did not promptly institute any judicial proceedings with respect to the rejection of said claim for the determination of the questions raised against the validity of said assessment, as agreed in said bond, nor has any action been commenced with respect thereto within two years from the rejection of said claim or within five years from September 5, 1924. Plaintiff does not predicate the instant action upon said claim for refund filed September 16, 1924, or its rejection."

"18. The instant action is predicated upon second and third purported claims for refund alleged to have been filed August 2 and December 28, 1928, for $183,410.44 and $481,380.82, respectively. * * * The second claim was a repetition of plaintiff's claim filed September 16, 1924, referred to in the bond."

"19. In view of the bond obligation, and his rejection of the claim filed September 16, 1924, the Commissioner refused to consider the second and third claims as anything other than requests for reopening or reconsideration of his action in rejecting the claim filed in connection with the bond, upon which claim no suit has been brought.

"20. It was plaintiff's duty under the bond to institute judicial proceedings promptly upon rejection of its claim for refund filed September 16, 1924, and to prosecute diligently any such judicial proceedings to final termination, if it wished to obtain a further determination of the questions raised by said claim for refund against the validity of the deficiency assessment.

"21. Plaintiff failed to institute promptly any judicial proceedings whatsoever upon the rejection of its claim for refund filed September 16, 1924, by reason of which failure its obligation under the bond to 'promptly pay all sums payable on account of said assessment to the extent that said assessment shall not have been determined to be without authority of law,' plus interest as provided therein, became absolute and fixed and, at the time of defendant's demand in 1928 for payment thereunder, more than a reasonable time within which to institute such judicial proceedings had elapsed.

"22. The payment by plaintiff of $400,-000 plus interest thereon of $81,380.82 was in discharge of its absolute and fixed obligation under the bond.

"23. Plaintiff voluntarily furnished the bond referred to in these findings.

"24. The object of plaintiff's bond was not only to prevent the immediate collection of the tax demanded but also to prevent the running of time against the Government, and plaintiff obtained the delay it sought by use of the bond."

for refund were filed within four years after the payment of the tax (26 U.S.C.A.Int. Rev.Code, § 3313), and the suit was timely brought.

 The bond was a valid and binding contract. Simmons Mfg. Co. v. Routzahn, 6 Cir., 62 F.2d 947, 949. It gave the Government a cause of action separate and distinct from the action to collect taxes which it already had. United States v. John Barth Co., 279 U.S. 370, 375, 49 S.Ct. 366, 73 L.Ed. 743. But we think that the court erred in holding that the giving of the bond constituted an election by the appellant to limit its right to contest the assessment to the manner and method described in the bond. The bond contains no express waiver of the right to sue, and if there is such a waiver, it can be implied only from the fact that the stated obligation is that of diligently prosecuting the claim of refund both before the Commissioner and in judicial proceedings. If the penalty for failing to perform this obligation had been the renunciation by the appellant of its right to contest the legality of the assessment, appellee's contention here would have had more substance. Instead, the penalty for failure diligently to prosecute the claim is the payment of all sums payable under the assessment. The $183,-410.44 had been paid when the bond was executed, and the balance of $400,000, plus $81,380.82 interest, was subsequently paid. Hence the penalty of the bond had been enforced in full. The essence of the contract was that the Goverment should be secured in the payment of the taxes, not that the refund action should be filed within a given time. Also the bond provided that the Government should be paid interest, which otherwise would not accrue. When the amount of the taxes, together with interest, was paid in full, the contract was fully performed and the Government is in no way harmed by now permitting the obligor to have its day in court to contest the legality of the assessment.

The cases relied upon by the Government, such as Simmons Mfg. Co. v. Routzahn, and United States v. John Barth Co., supra, are cases in which the giving of the bond after the time of the statute has run has been rightly held to estop the taxpayer from defending upon the ground of the statute of limitations. Since the giving of the bond constitutes an additional obligation, in such cases the statutes which bar. collection of the tax cannot be extended by implication to bar suit upon a subsequent and substituted contract. United States v. John Barth Co., supra, 279 U.S. at page 375, 49 S.Ct. 366, 73 L.Ed. 743. There is nothing analogous here where the contract has been performed in full, to estop the taxpayer from making within the statutory time a defense of illegal assessment.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.