## Appeal of RICHMOND DAIRY LUNCH.          Docket No. 620.

Evidence of the capital value of leaseholds *held* to be insufficient to support a claim for a deduction of any amount from gross income based upon the exhaustion of such leaseholds.

Such property rights as leaseholds and good will acquired by a corporation for stock can be included in invested capital only when the actual cash value of such properties at the time paid in for stock is definitely proven.

Submitted February 24, 1925; decided March 25, 1925.

*Neal Brewster, Esq.*, for the taxpayer.

*A. Calder Mackay, Esq.*, for the Commissioner.

Before STERNHAGEN, TRAMMELL, and TRUSSELL.

This is an appeal from a Commissioner's letter asserting deficiencies in taxes for the year 1919 of $799.03 and for the year 1920 of $629.66.

FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of the State of New York, having its principal place of business at Utica, N. Y.

In 1908, Everett W. Dibble and Benjamin F. Roberts formed a partnership; secured a lease at No. 8 La Fayette Street in the city of Utica, at a rental of $1,500 per year, for a term of 10 years, and opened up, and thereafter conducted, a restaurant.

In April, 1913, the lease of No. 8 La Fayette Street, which still had approximately five years to run at the rental of $1,500 per year, was extended by a new lease of the same premises made to run for the period ending April 30, 1919, at an increased rental of $2,800 per year.

The partnership continued in business until October, 1914, at which time Dibble purchased the one-half interest owned by Roberts for $12,000. At this time the physical assets of the partnership were inventoried at approximately $16,000 and the payment of $12,000 for one-half interest was allocatable as follows:

Physical properties_____ $8,000
Interest in the going business_____ 4,000

On or about May, 1915, Dibble secured a lease of No. 10 La Fayette Street at a rental of $6,000 per year. In June, 1915, Dibble, then being the sole owner of this restaurant business, caused the taxpayer corporation to be organized, and he then turned over to

this corporation all of his interests in the lease of No. 8 La Fayette Street and executed to the corporation a sublease agreement of No. 10 La Fayette Street and transferred to the corporation all of the tangible and intangible assets of his restaurant business in consideration of $13,550 to be paid in cash, and caused to be issued to him or his nominees $25,000 par value of stock of the taxpayer corporation. The opening entries upon the ledger of the taxpayer corporation were as follows:

Assets:

| | |
|---|---:|
| Kitchen and restaurant equipment | $7,983.56 |
| Merchandise | 4,268.13 |
| Cash | 20.00 |
| Improvements on leased premises | 4,664.68 |
| Good will (lease) | 21,613.63 |
| Total | 38,550.00 |

Liabilities:

| | |
|---|---:|
| Accounts payable (E. W. Dibble) | 13,550.00 |
| Capital stock | 25,000.00 |
| Total | 38,550.00 |

During the years 1916 and 1917 Dibble sold at different times various shares of his stock in the taxpayer company at par and in amounts as follows:

*1916.*

| | |
|---|---|
| Mar. — | 2 shares at $100 per share |
| Apr. 27 | 20 shares at $100 per share |
| Sept. 1 | 2 shares at $100 per share |
| Sept. 29 | 2 shares at $100 per share |

*1917.*

| | |
|---|---|
| Feb. 16 | 2 shares at $100 per share |
| Mar. 10 | 5 shares at $100 per share |
| Apr. 19 | 80 shares at $100 per share |

In making its income and profits tax return for the year 1919 the taxpayer claimed, among others, the following deductions from gross income: Depreciation of leaseholds, $2,161.36, and loss on automobile junked, $350.21; and in its return for the year 1920 taxpayer claimed, among others, a deduction from gross income, namely: Depreciation of lease, $1,500. In both of these returns the taxpayer claimed as a part of its invested capital the full ledger amount of the item "good will (lease) $21,613.63."

The Commissioner, in auditing these returns, disallowed all of the last above deductions from gross income and eliminated the good-will item from invested capital, and, predicated upon these rejections and disallowances, computed the deficiencies from which this appeal is taken.

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

TRUSSELL: The taxpayer in its petition claimed deductions from gross income on account of exhaustion of leaseholds for both the

years 1919 and 1920 and a loss on an automobile for the year 1919. It also claimed that its capital account of good will should be included in invested capital at the value carried upon its books. In the presentation of its appeal the taxpayer furnished no evidence or argument concerning the alleged loss upon an automobile and relied wholly on the issues of depreciation on leaseholds and the inclusion of its good-will item in invested capital. Respecting the issues involved in this appeal, Everett W. Dibble, president of the taxpayer company, testified at considerable length and furnished in detail much of the history of the taxpayer's business, which had been organized in 1908 and conducted as a partnership until June, 1915. He also testified that when the taxpayer company was organized he turned over to it a leasehold of No. 8 La Fayette Street and executed to it a sublease of the premises at No. 10 La Fayette Street in the city of Utica, N. Y. At the same time this witness transferred to the taxpayer company all of the physical properties and the good will of the business which he had been conducting as sole proprietor. In return for the transfer of physical properties, good will, and leaseholds, he received from the company an account payable for $13,550, which appears later to have been paid in cash, together with $25,000 of the capital stock of the taxpayer company, which was all issued either to him or to such persons as he then designated. He transferred to the company physical assets which were entered upon its books at a valuation of $16,916.37, and a business good will, including leaseholds, which he caused to be entered upon the books of the company at a valuation of $21,613.63.

Proceeding with his testimony, Dibble showed that the premises turned over to the taxpayer company were located upon a corner of a business street at or near the busiest section of the city and surrounded by other important business establishments and hotels; that the leases were regarded by him as being made upon favorable terms and that tenants of other properties in the immediate vicinity were paying rentals at rates greater than this taxpayer was required to pay, and from these facts he asserted that the taxpayer's leaseholds had a capital value. He did not, however, undertake to show by any definite figures what that value was. His testimony further showed that, during the years 1916 and 1917, capital stock of the company was sold to a number of different individuals at par, apparently expecting the Board to infer that when buyers of stock paid par for the company's shares the good will and leases which constituted a part of the basis for the issuance of such shares must have been worth the amount claimed therefor at the time the stock was issued. The taxpayer did not undertake to prove, and the record does not contain any evidence which discloses, whether the taxpayer's business was prosperous after the organization of the corporation or whether the business of the predecessor partnership was prosperous, and it furnished no data from which we might apply any accepted formula for the computation of a good-will value.

The income-tax statutes, beginning with the Act of 1909, all have provided for a deduction from gross income on account of the exhaustion, wear and tear, and depreciation of properties used in business, and the reason for such deduction is to provide a method by which the capital investment of a taxpayer may be kept intact while its physical properties, or some of them, may be losing their capital

value by reason of their use in business or by lapse of time. This deduction, however, must be computed ratably over the period of the useful life of the property and at a rate that will restore the capital cost at the end of the period when the property may be presumed to have lost its usefulness. This method of computation of the allowable deduction, however, requires that the capital cost of the property be definitely known. The books of this taxpayer, as described by the evidence, and the record of the testimony furnished, do not contain any definite figures of the value of the leaseholds when acquired, and we are, therefore, unable to find that this taxpayer is entitled to claim a deduction for exhaustion computed upon an alleged asset of unknown value.

Concerning the rejection of the good will and leasehold items from invested capital the record leaves us in practically the same situation. Under the Revenue Act of 1918 leaseholds which could, no doubt, be treated as tangible properties might be included in invested capital at their actual cash value when paid in for stock or shares, and good will might be included in invested capital at its actual cash value when paid in for stock or shares but not in excess of 25 per centum of the capital stock outstanding at the beginning of the taxable year. But the par value of stock issued for such assets can not be accepted as the measure of their actual cash value. Nor does the selling price of the stock two or three years later determine the value of such assets at the time the corporation was organized. From the record we are unable to determine what, if any, value the good will and the leaseholds had, when paid in for stock, and we must, therefore, find that, since this taxpayer has failed to prove actual cash value in any ascertainable amount, this claim for the inclusion of the book value in invested capital must fail.