WESER BROS., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10548, 17055, 25239.   Promulgated July 18, 1928.

*Nelson S. Spencer, Esq.*, for the petitioner.
*John W. Fisher, Esq.*, for the respondent.

OPINION.

LOVE: These proceedings are brought to redetermine deficiencies in income and profits tax in the total amount of $41,230.61 for the fiscal years ended January 31, 1919, 1920, and 1921, in Docket No. 10548; in the amount of $2,444.67 for the fiscal year ended January 31, 1922, in Docket No. 17055; and income tax in the amount of $11,086.93 for the fiscal year ended January 31, 1923, in Docket No. 25239.

Because the issues involved are common to all the appeals, the cases were consolidated for the purpose of hearing and decision.

The petitioner alleges that in determining deficiencies for the years in question, the Commissioner erred in each of the following respects:

(1) In including in the taxable income of the petitioner, for each of the years referred to, a profit on collections received in liquidation of accounts receivable acquired by petitioner in 1917.

(2) In excluding from invested capital for the years 1919, 1920, and 1921, items of good will, patents and trade marks.

(3) In excluding as a deduction from gross income exhaustion of patents.

From 1879 to 1917, John A. Weser manufactured and sold pianos in the City of New York. From a relatively small beginning this business grew until on May 18, 1917, it occupied an eight-story factory building covering three acres of floor space and maintained four branch establishments at which pianos were sold with profits running upward to $100,000 a year. On that date Weser died and his widow, Elsie A. Weser, was appointed administratrix of his estate. Upon his death the actual conduct of the business was suspended and an inventory of its assets was taken. Thereupon, on May 26, 1917, a corporation was organized under the laws of the State of New York, known as Weser Bros., Inc., and all the assets of the business were transferred to it by the administratrix under a bill of sale dated July, 1917, in consideration of the issuance to her of the entire capital stock of the corporation of a par value of $1,000,000, with the exception of $3,000 which was paid for in cash, and the assumption of the outstanding liabilities of the business conducted by Weser during his lifetime.

As of the date of the death of Weser there were on the books of the business notes and accounts receivable of a face value of $937,-488.28, which were appraised in the inventory then made at a value of $684,147.60. These notes and accounts receivable arose from sales of pianos, usually on the installment plan, and discount on their face value represented the estimated cost of collection, based upon an experience extending over a number of years. With the other assets, these accounts were taken over by the corporation for stock at their discounted value, namely, $684,147.60.

In the determination of the amount of deficiencies herein involved, the Commissioner held that the petitioner acquired a large number of separate accounts receivable, to each of which the discount from the face value applied uniformly, and that after the discounted value of each individual account was paid off by the debtor, the amount received in excess thereof, representing the discount at which such account was acquired, constituted profit realized by the petitioner and includable in gross income. On the contrary, the petitioner asserts that it acquired these assets as a single aggregate receivable, on which no profit was realized until it had first received a return of capital equal to the amount at which they were taken over. The record does not disclose the years in which the separate accounts became fully paid up, and in the absence of more accurate data, the

Commissioner computed the profit of the petitioner by allocating part of each year's receipts from these accounts to profit, in the ratio of the total discount to the total face value of all the accounts taken over; that is, the Commissioner treated each account separately with a view to computing profit on each account, as, if, and when, payments thereon became in excess of the cost thereof; but in the absence of data tending to show when each individual account had been fully or partially paid off, he resorted to the installment method of treating as profit that part of each payment equal to the ratio between the total discount value and the face value of the accounts taken over.

A careful consideration of the record in this case convinces us that the determination of the Commissioner on this issue should be sustained. Since the parties to the transaction by which the accounts receivable belonging to the estate of John A. Weser were transferred to the petitioner, were privileged to make the exchange for stock upon a basis which represented the true value of such accounts, it must be assumed that the discounted value at which they were taken over represented their actual worth at the time. There is no controversy as to this. As these choses in action were reduced by collection to choses in possession, there was gain to the petitioner to the extent that the amount collected on each account exceeded the basis on which it was acquired. There is no evidence in the record tending to show the status of each account during the years in question, and therefore, under the circumstances, the method of treatment of collection on these accounts adopted by the Commissioner must be affirmed.

In filing its return for each of the years in question, the petitioner has included in invested capital the amounts of $150,000, $50,000, and $14,501.69, representing respectively good will, patents, trade-marks and trade-names transferred to it by the administratrix of the estate of John A. Weser at the time of its organization. The Commissioner, in the audit of the return of the petitioner, excluded such items from invested capital under section 331 of the Revenue Act of 1918, on the ground that there was no evidence tending to show that an account for good will, patents, trade-marks and trade-names had ever been carried on the books of the said John A. Weser, or that such assets could have been carried by him on his books through acquisition by purchase or otherwise, and that since he could not have included such items in invested capital had he lived, the administratrix, who is his personal representative and stands in his place, likewise had no power to escape the limitations contained in section 331 of the statute, by transferring such assets to the corpo-

tion formed after his death. While it is true that for some purposes the administratrix stands in the place of the intestate, *In re Miner's Estate*, 39 Misc. 605; 80 N. Y. S. 645, for other and more vital purposes he represents adverse interests and takes title to the personal property of the intestate to administer it for the benefit of creditors, if any, or of the next of kin. *In re Miner's Estate, supra; Blood* v. *Kane*, 130 N. Y. 514; 29 N. E. 994. Considered in the latter respect the estate and the deceased are separate and distinct entities and, except insofar as the assets of the estate may be chargeable with the payment of the decedent's debts, his entire interest has necessarily ceased. Under the facts of the instant case, therefore, the question is not as to the effect of the limitations of section 331, had John A. Weser himself transferred these assets to the petitioner, but whether that section of the statute applies to his administratrix, who for this purpose must be considered as the previous owner of the assets of the business conducted by him during his life time. The Revenue Act of 1918 provides that in the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received; provided, that if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner). (Section 331.)

Under the circumstances of this case it must be said either that the statute is inapplicable, since obviously there was no cost of acquisition to the previous owner, or that the term " cost of acquisition " as used in the statute means in this case the value of the assets at the date of acquisition by the administratrix. While the precise question now raised has not been considered heretofore, in the somewhat analogous case involving the basis for the computation of gain or loss resulting from the sale of property of an estate by an executor, the Board held that the basis is the same as the basis in the case of sale of property acquired by gift, namely, the value at the date of acquisition if that date be subsequent to March 1, 1913. *Appeal of Dorothy Payne Whitney Straight, Executrix*, 7 B. T. A. 177; *Bankers Trust Co.* v. *Bowers*, 23 Fed. (2d) 941; *McKinney* v. *United*

*States*, 62 Ct. Cls. 180, contra. See also *Heiner* v. *Tindle*, 276 U. S. 582. Accordingly we hold that in this case the cost of acquisition means value at date of acquisition by the administratrix, which was the date of the death of John A. Weser, and that under section 331 of the statute the petitioner may include in invested capital an amount equal to the value of the assets transferred to it by the administratrix of the estate of John A. Weser at the date of acquisition, provided such value is established by the record. This presents the sole remaining question in this issue.

At the hearing the capital and profits of Weser Bros. for the six-year period from 1912 to 1917, inclusive, were established by stipulation. In view of the fact that the transfer of the assets of the business to the petitioner occurred in July, 1917, the amounts for that year should in our opinion be excluded from any computation made for the purpose of arriving at the value of intangibles used therein. The business earned a substantial profit each year from the beginning. The net tangible assets and net profits of the business for the years 1912 to 1916, inclusive, were as follows:

|  | Capital | Profits |
|---|---|---|
| 1912 | $377, 994. 95 | $95, 659. 99 |
| 1913 | 588, 691. 15 | 107, 451. 07 |
| 1914 | 690, 189. 13 | 80, 899. 85 |
| 1915 | 742, 858. 19 | 41, 470. 41 |
| 1916 | 798, 156. 08 | 64, 907. 63 |
|  | 3, 197, 889. 50 | 390, 388. 95 |
| A yearly average of | 639, 577. 90 | 78, 077. 79 |

From a consideration of the history of the business and of all the evidence in the record, we are of the opinion that the actual cash value of the intangibles transferred by the administratrix of the estate of John A. Weser to petitioner for invested capital purposes was $186,000. Accordingly, we conclude that the Commissioner erred in excluding from invested capital for the years 1919, 1920, and 1921, items of good will, trade-marks and trade-names, and patents to the extent of $186,000, as shown herein.

The third and last issue relates to the exclusion by the Commissioner of a deduction from gross income representing exhaustion of patents.

As heretofore shown under the second issue, petitioner has established that it acquired at the time of organization an aggregate of intangibles valued at $186,000 from the administratrix of the estate of John A. Weser.

These patents cover the development of player action used in the manufacture of player pianos. The privilege of manufacturing a

few of the devices covered by the patents had been granted to other manufacturers of pianos, and between 1912 and 1916, inclusive, collection of royalties from this source averaged approximately $900 per year, and from 1917 to 1923, inclusive, approximately $2,100 per year. That these patents were a material income-producing factor is further shown by the fact that the major part of the business done consisted of the sale of player pianos. The only witness to testify at the hearing, after stating that his access to the books of John A. Weser was such as to enable him to determine the profits made and the channel through which they came, expressed his opinion that the patents had a value of $50,000 at the date of transfer to petitioner.

Considering the record in this case as a whole, we are convinced that for purposes of exhaustion the patents transferred to petitioner by the administratrix of John A. Weser had a value at the date of transfer of $40,000; and since it is admitted in the brief of the respondent that the only question involved in the issue is the value of the patents, we hold that the Commissioner erred in excluding an allowance therefor as a deduction from gross income and that such deduction should be allowed on the basis of the value of the patents as found herein. The exhaustion should be over the average life of such patents, which is not in controversy.

*Judgment will be entered under Rule 50.*