*180 OPINION.
Trussell:
The first issue involves primarily the question of fact as to the value of certain assets for the purpose of invested capital. As of March 31, 1919, petitioner acquired the going business of a predecessor corporation in consideration of cash and its capital stock at par, totaling $1,082,645.35. The predecessor corporation had been in business for a good many years and had built up a large and profitable business, but in 1919 its stockholders desired to retire from active business. On March 19, 1919, the parties in interest entered into a contract for the sale of the predecessor’s business .upon a certain basis and upon certain agreed valuations or values to be determined in an agreed manner, and on July 17, 1919, the parties entered into a supplemental agreement for the purpose of settling disputes and definitely fixing the purchase price. It was agreed that the purchase price should be $582,645.35 in cash and 5,000 shares of petitioner’s preferred capital stock with a par value of $100 each, which stock was redeemable at par by petitioner at any dividend-paying date. The agreements further provided that Kauffman, president of petitioner, should purchase at par from the predecessor, 2,500 shares of petitioner’s preferred stock.
Immediately upon incorporation approximately 5,250 shares of petitioner’s common capital stock were sold for cash at par value of $100 each to Kauffman and his friends. In September, 1919, petitioner employed the American Appraisal Co. to appraise a portion of the machinery, equipment and fixtures and after such appraisal was made upon the basis of reproduction cost less the estimated actual depreciation, the petitioner entered upon its books the appreciated values, the total increase amounting to $155,228.36, which was included in invested capital as paid-in surplus. Petitioner computed depreciation on its fixed assets upon the basis of the appreciated book values. To substantiate its claim for the paid-in surplus petitioner has introduced in evidence the appraisal made in 1919 and expert testimony as to the sound values of the assets in question in September, 1919, and as to the depreciation thereon. We are of the opinion that the sale of the business and *181 assets by a willing vendor and the purchase by the petitioner, a willing vendee, establishes the total actual cash value of all the assets transferred within the meaning of section 326 of the Eevenue Acts of 1918 and 1921, especially in view of the fact that the parties went into such great detail in their contracts in setting forth the agreed values of all the various assets. The total cost to petitioner for all the assets transferred to it amounted to approximately $1,082,000, and without showing the actual cash values of the various items of property included therein, other than the agreed values, petitioner has singled out the item of machinery and equipment which was transferred at an agreed value of $160,624.22, and seeks to have the latter figure increased by $155,228.36. The machinery and equipment constitutes a relatively small item out of the total purchase price, and without proof that each of the other items had actual cash values equal to the agreed values, there is no basis for segregating the one item and allowing a paid-in surplus with respect thereto, even though its cash value may be in excess of $160,624.22, as indicated by the testimony. It may well be that the actual cash values of other items, if segregated, are less than the agreed values.
The respondent is sustained in his exclusion from petitioner’s invested capital of the values ascribed to fixed assets in excess of the net book values of the said assets as recorded on the books of the predecessor and agreed upon by the parties as the values of those assets. Cf. White Eagle Brewing Co., 6 B. T. A. 607. The respondent is also sustained in his computation of allowable deductions for depreciation wherein he excluded from the basis the appreciation or write-up of $155,228.36 on certain assets over and above the cost in 1919, which write-up was based upon appraisal values. Depreciation is an allowance for the recovery of capital invested. See Richmond Dairy Lunch, 1 B. T. A. 876.
With reference to the directory business, petitioner claims a paid-in surplus in the amount of $7,819.09, representing prepaid expenses on the edition of the directory partly ready for publication at the time of its acquisition. The parties to the transfer agreed upon a value of $25,000 for the directory business. In setting up its accounts on March 31,1919, petitioner included in its capital account the amount of $25,000, which was the agreed value of the directory business. At the same time the prepaid expense in the amount of $7,819.09 was set up as a deferred expense which was reflected in its surplus, but during that first fiscal year ended March 31, 1920, the directory was published and the said amount charged to expense. In computing petitioner’s invested capital for the fiscal year ended March 31, 1920, respondent has included therein $25,000 as the cost of the directory business, an asset, but he has excluded therefrom the claimed paid-in surplus of $7,819.09, and, also, he disallowed a de *182 duction in that amount as an expense. We are of the opinion that respondent correctly excluded from invested capital the amount of $7,819.09 as a paid-in surplus for that item was not a capital item, but was a part of the cost of the publication of the directory and as such a business expense, deductible from gross income for the fiscal year ended March 31, 1920. Cf. American Colortype Co., 10 B. T. A. 1276.
The third issue is relative to the reserve for possible loss on accounts receivable and other like assets acquired from the predecessor. The parties to the transfer agreed that there be included, in the purchase price the net value of certain accounts receivable and at the time of acquisition of such accounts petitioner set up on its books a reserve for losses in the amount of $47,289.23. The purpose of the reserve was to provide for contingencies in connection with the realization of the values at which the accounts receivable and other like assets were set up on the books. After the accounts receivable or other like assets subject to shrinkage were collected or charged off, the reserve was reduced to a balance of $10,949.89, which amount petitioner claims to be paid-in surplus and a part of its invested capital. .In accordance with the view taken as to the first issue, the value agreed upon by the parties to the transfer should govern the value at which the accounts receivable should be included in invested capital. The respondent is sustained in the exclusion of $10,949.89 from petitioner’s invested capital as paid-in surplus. The assets which petitioner purchased were realized upon at an amount of $10,949.89 in excess of the cost of those particular assets to petitioner and in our opinion such amount constitutes income within the meaning of section .213 (a) of the Revenue Act of 1918. Cf. Weser Bros., Inc., 12 B. T. A. 1394.
The fourth issue involves the question of the character of certain expenditures totaling $17,330.95, which amount petitioner took as a deduction as an expense and which respondent disallowed. The question is one of fact as to whether the expenditures were for replacements, alterations, improvements, or additions which appreciably prolonged the life of the property and increased its value, or whether the- expenditures were for the purpose of keeping the property in an ordinarily efficient operating, useful or serviceable condition over its probable useful life. If found to be the former, the expenditure must be capitalized, and if the latter, it is deductible as an ordinary and necessary business expense. See Illinois Merchants Trust Co., Executor, 4 B. T. A. 103. We are of the opinion that the electric wiring, the new roofing, the new windows, the new flooring, the reconditioning of the elevators, the remodeling of the mezzanine floor, and the plastering of the walls and ceilings constituted replacements, alterations and improvements on the leased *183 property and those items should be charged to petitioner’s capital account and amortized over the life of the lease. Each of the items has a life in excess of one year. Upon the facts in this case, we are of the opinion that the following items were for the purpose of keeping the building in an ordinary efficient condition and are properly deductible as an expense pursuant to the provisions of section 214 (a) (1) of the Revenue Act of 1918:
Painting_ $300
Repairing sidewalk lights_ 200
Miscellaneous repairs_2, 452
Total_2,952
With the allowance of $2,952 as a deduction from income for the fiscal year ended March 31, 1920, any deductions allowed by way of depreciation on said assets should be eliminated. Invested capital allowed by respondent for the year 1921 should be reduced by the amount of $2,952 for repairs.
The last issue is decided by our holding relative to the first issue. The values agreed upon at the time of the transfer were, the actual cash values in March, 1919, and also the cost to petitioner of the assets sold in 1921. The respondent is sustained.

Judgment will be entered pursuant to Rule 50'.