ALBERT LEA PACKING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PENNSYLVANIA INVESTORS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILSON COMMISSION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILSON & COMPANY, INC., OF CALIFORNIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

UNION LARD CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

STANDARD BEEF COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SELLS SPORTING GOODS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MISSISSIPPI PACKING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN REARDON & SONS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FAME CANNING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

DREXEL PACKING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CENTRAL RENDERING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20765–20776. Promulgated October 21, 1931.

*W. R. Brown, Esq.*, for the petitioner.
*J. M. Leinenkugel, Esq.*, and *T. G. Histon, Esq.*, for the respondent.

378

OPINION.

ARUNDELL: Petitioners contend that the assessments made in January, 1922 and 1923, are now uncollectible by reason of the statute

of limitations. We agree with that contention. The assessments were timely made, but at the time the deficiency notices were mailed, August 27, 1926, collection was barred under the decision in *Russell* v. *United States*, 278 U. S. 181.

In the case of only one of these petitioners, namely Wilson & Company, Inc., of California, has collection been enforced since the statute against collection became operative. It is claimed that the amount collected from that petitioner on January 3, 1927, constitutes an overpayment under section 607 of the Revenue Act of 1928 and should be refunded. That section, however, is limited by section 611 of the same act, which provides that where a tax was timely assessed, abatement claim filed and collection stayed, then the tax paid before or within one year after the enactment of the 1928 Act shall not be considered an overpayment. The facts in this case bring it within section 611. The application of that section is not affected by the fact that collection was enforced by distraint warrant as it has been specifically held that that section "embraces involuntary payments." *Graham* v. *Goodcell*, 282 U. S. 409. That case and the group of related cases decided the same day hold section 611 to be a valid enactment of Congress and overrule various objections that had been advanced as to the validity of the section. The application of section 611 in our opinion is not affected by the fact that payment was made after a petition for redetermination was filed with the Board. We had similar facts in *F. A. Gillespie*, 20 B. T. A. 1068, and we held that section 611 applied, although not making specific mention of that phase of the case. While section 284(e) of the Revenue Act of 1926 and the amendment thereof by section 507 of the Revenue Act of 1928 give us jurisdiction to determine overpayments and provide that overpayments so found shall be credited or refunded, it is our opinion that section 611 must be considered a limitation on those provisions, and where the circumstances detailed in section 611 are present we are prohibited from finding that the payments made are overpayments. To hold otherwise would be to say that section 611 places a limitation on the finding of overpayments by the Commissioner and by any court in which suit may be brought for refund but not on the Board. In *Graham* v. *Goodcell*, it was argued that the section applied to the Commissioner, but not to judicial proceedings. This the Supreme Court rejected, saying:

It would be anamolous that the right of the taxpayer to obtain a refund from the Department, to which he was under obligation to resort (R. S. 3226, U. S. C., Title 26, section 156), should be denied, while the right to recover by suit the same amount under exactly the same circumstances should remain unaffected. * * * We think it was intended to prevent refunds in the circumstances stated and not merely a particular way of getting the money from the Treasury;

that the effect of the provision was to deny a right to recover the amount paid and that *the provision governs equally wherever the right is asserted*. [Italics supplied.]

The reasoning of the court is applicable here and we accordingly hold that the amount collected from Wilson & Company, Inc., of California, on January 3, 1927, is not an overpayment.

Petitioners argue that the assessments made in 1922 are invalid because of lack of notice and opportunity for hearing as prescribed by section 250 (d) of the Revenue Act of 1921. We think there is no merit in this contention. The deficiencies had been determined and the petitioners notified thereof prior to the enactment of the Revenue Act of 1921.

It is also claimed that the jeopardy assessments made in 1923 are void because the provision of the statute authorizing such assessments fails to provide for notice or opportunity for hearing and hence violates the due process clause of the Fifth Amendment to the Constitution. We considered the same objections to the jeopardy assessment provision of the Revenue Act of 1924 in *Continental National Bank & Trust Co.*, 20 B. T. A. 829, and held adversely to the claims made here. We hold the same in these cases.

It is stipulated that on September 27, 1927, the respondent determined that the parent company, Wilson & Company, Inc., of New York, had overpaid its taxes for 1918, and before refunding the overpayment he credited certain amounts on the assessments against the several petitioners. At the time the credit was so made collection of the assessment was barred.

No issue is raised in the pleadings with respect to the credits made by respondent and the petitions contain no prayer for relief in respect of them. In petitioners' brief it is argued that the attempt of the respondent so to credit the taxes refundable to the parent company " is of no effect." To dispel any confusion that may arise through the similarity of names, we point out here that the parent company is Wilson & Company, Inc., of *New York* and the subsidiary that is a party to these proceedings is Wilson & Company, Inc., of *California*. The parent company is not before us asking for a refund and so we have some difficulty in determining what point the petitioners are trying to make with regard to the credit.

It may be, as held in *Hart Glass Manufacturing Corporation* v. *United States*, 48 Fed. (2d) 434, that, in the absence of an agreement, the Commissioner may not credit an overpayment by one member of an affiliated group against the deficiency of another member. But even if the pleadings clearly raised this issue, it would avail the parent company nothing for us to so hold, because that company is not before us as a party to the proceedings. We do not understand

that petitioners are seeking a refund of the amounts credited to the assessments against them. The determination of refunds is beyond our jurisdiction, but we may in proper cases determine overpayments, which the statute directs shall be credited or refunded. If this—the determination of overpayments—is the issue, we hold that the crediting of the parent company's overpayment to the assessments against petitioners does not constitute any overpayment on the part of petitioners. The petitioners have paid nothing. It is conceivable that the parent company might in a proper proceeding secure a refund of its overpayment which was credited against the barred assessments, and if we were to hold that the credit constituted overpayments of petitioners, the result would be a double refund.

As the result of the stipulations filed there remain only two questions for decision on the merits. Both arise under the invested capital issue and are (1) whether or not the earned surplus of four of the subsidiaries at the time their stock was acquired by the parent company should be included as a part of consolidated invested capital, and (2) whether or not the stock of Schwarzschild & Sulzberger Company, received by the parent company in exchange for its capital stock, had a value in excess of the amount allowed by the respondent in his determination of the consolidated invested capital.

In relation to the first question, the parties have stipulated and we have found that, at the time the parent company acquired the stock of the said four subsidiaries, they had earned surpluses in the total amount of $778,590.74, which amount respondent disallowed in its entirety in computing consolidated invested capital for the taxable year 1917. These are the only relevant facts disclosed by the record. We do not know when the parent company acquired the stock of the subsidiaries, except that obviously it was prior to 1917; nor do we know whether the said amount of earned surplus was in the possession of the subsidiaries at the beginning and end of the taxable year. Unless the subsidiaries had the earned surplus at the beginning of the taxable year, it may not be included in consolidated invested capital.

The facts are not sufficient to bring this case within our decisions to the effect that earned surplus of subsidiaries should be included in determining consolidated invested capital. See *Farmers Deposit National Bank et al.*, 5 B. T. A. 520; *Grand Rapids Dry Goods Co.*, 12 B. T. A. 696; *American Bond & Mortgage Co.*, 15 B. T. A. 264.

On this question we think what we said in *Middlesex Ice Co. et al.*, 9 B. T. A. 156, is applicable:

In the instant case, it appears that on May 1, 1919, the Cambridge Ice Company's surplus (whose stock was acquired by the Middlesex Ice Co. for its own stock) was in excess of the amount existing at the date when the holding

company acquired the Cambridge Ice Company's stock. That surplus, not having been distributed to the stockholders or dissipated in operations, may not be eliminated from the consolidated invested capital * * *.

In this case, however, we do not know whether or not at the beginning of the taxable year 1917 the subsidiaries had any earned surplus. It may have been distributed or dissipated in operations long prior to the taxable year. We therefore approve the Commissioner's determination in eliminating these surpluses from consolidated invested capital.

The second question under the invested capital issue arises from the petitioner's claim that the stock of Schwarzschild & Sulzberger Company, all of which, except 40 shares, was acquired by the parent company in exchange for shares of its capital stock, had a value in excess of the amount allowed by the respondent in computing consolidated invested capital.

The respondent determined the value of said stock to be $15,130,-319.96, which he included in the consolidated invested capital. This determination is presumed to be correct.

The petitioners contend that the value of said stock, for invested capital purposes, is the par value of the shares issued therefor, plus the amount of cash paid for a portion thereof for which stock was not issued.

In April, 1910, the parent corporation acquired 43,581 shares of stock in the Schwarzschild & Sulzberger Company in exchange for 52,278 shares of its preferred stock, of the par value of $5,227,800, and 200,000 shares of its common stock, of the par value of $20,000,-000, or stock of the total par value of $25,227,800. Thereafter, on September 5, 1910, the parent corporation purchased an additional 40 shares of Schwarzschild & Sulzberger stock for $24,000 cash. The aggregate of the par value of the parent company stock, plus the cash, or the amount of $25,251,800, is the value of the Schwarzschild & Sulzberger stock which the petitioners contend should be included in computing their consolidated invested capital.

This question is governed by the Revenue Act of 1917, which provides in material part as follows:

SEC. 207. That as used in this title, the term "invested capital" * * * means * * *:

(a) In the case of a corporation * * * (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation * * * at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January first, nineteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor), and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year: * * *

The petitioners argue that the minute book of the parent corporation shows that its directors were personally familiar with the property, business and prospects of Schwarzschild & Sulzberger Company, and that they valued the business at $28,000,000, which valuation should be accepted by us, but because of the limitation contained in the above quoted statute, the value of the stock can' be included in invested capital only at the par value of the shares of stock issued therefor, plus the $24,000 cash paid for the additional 40 shares. Thus, they seek to fix the value of said stock, for invested capital purposes, at $25,251,800 at the time when acquired by the parent corporation in 1910.

We have repeatedly held that the par value of stock issued for assets is not the measure of their actual cash value. *Richmond Dairy Lunch*, 1 B. T. A. 876; *Barnes Coal & Mining Co.*, 3 B. T. A. 891; *Wallis Tractor Co. et al.*, 3 B. T. A. 981, nor is the value determined by directors, as evidenced solely by a corporate resolution, sufficient to overcome the presumption of correctness of the Commissioner's determination.

It does not appear that the Schwarzschild & Sulzberger Company was included in a consolidated return with the petitioners during the taxable year. It is clear that the transaction occurred prior to the taxable year, and both parties hereto have acted upon the theory that this is not a question of consolidated invested capital as between Wilson & Company and Schwarzschild & Sulzberger Company. The latter corporation is not included in the list of affiliated corporations set out in the stipulation. We think, therefore, that the invested capital of Wilson & Company with respect to the stock of Schwarzschild & Sulzberger is governed by our decision in *Regal Shoe Co.*, 1 B. T. A. 896.

Capital stock of a corporation is regarded as tangible property for invested capital purposes, *Regal Shoe Co.*, *supra; United Cigar Stores of America* v. *United States*, 62 Ct. Cls. 134, and where paid in for stock prior to January 1, 1914, invested capital under the 1917 Act must be computed on the basis of the actual cash value of the stock paid in, as of that date. *West End Consolidated Mining Co.*, 3 B. T. A. 128; *Duquesne Steel Foundry Co.*, 15 B. T. A. 467; *Arizona Commercial Mining Co.* v. *Casey*, 32 Fed. (2d) 288.

It is deemed unnecessary to discuss in detail objections to the petitioner's argument or the insufficiency of the proof, other than to point out that value is a question of fact which must be determined from the evidence before us in each case, and that in the present record there is no evidence respecting the value of the Schwarzschild & Sulzberger stock as of January 1, 1914. The petitioners contented themselves with attempting to fix the value of said stock as of 1910.

If we should accept the argument of the petitioners as sound, we could not assume, in the absence of proof, that the value in 1910 remained the same on January 1, 1914. On the latter date, the value might have been more or it might have been less. The petitioners offered no evidence, nor does the record otherwise disclose any fact, respecting the value of the stock as of the basic date fixed by the statute. For lack of evidence to show error, respondent's determination on this point is approved.

As indicated above, the parties have disposed of some of the issues by stipulation. The matters so agreed upon are stipulated in paragraphs numbered 2, 3, and 4 of the agreed statement of facts filed at the hearing and will be settled under Rule 50.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

TRAMMELL, dissenting: It must be kept in mind that the collection from Wilson & Company was made while the proceeding was pending before the Board. This being true, in my opinion, not only section 611 of the Revenue Act of 1928, but other provisions of the 1928 Act and provisions of the 1926 Act, should be considered on the question of whether the Board has the authority by statute to determine an overpayment of tax when it is paid after a petition has been filed with the Board after the running of the statute of limitations. In my judgment the following provisions are applicable:

*Revenue Act of 1926.*

SEC. 284. (d) If the Commissioner has mailed to the taxpayer a notice of deficiency under subdivision (a) of section 274 and if the taxpayer after the enactment of this Act files a petition with the Board of Tax Appeals within the time prescribed in such subdivision, no credit or refund in respect of the tax for the taxable year in respect of which the Commissioner has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of such tax shall be instituted in any court except—

\*       \*       \*       \*       \*       \*       \*

(3) As to any amount collected after the statutory period of limitations upon the beginning of distraint or a proceeding in court for collection has expired; but in any such claim for credit or refund or in any such suit for refund the decision of the Board which has become final, as to whether such period has expired before the notice of deficiency was mailed, shall be conclusive.

\*       \*       \*       \*       \*       \*       \*

(e) If the Board finds that there is no deficiency and futher finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer \*  \*  \*.

*Revenue Act of 1928*

SEC. 507. OVERPAYMENTS FOUND BY BOARD OF TAX APPEALS.

Section 284 (e) of the Revenue Act of 1926 is amended to read as follows:

"(e) If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer as provided in subdivision (a). Unless claim for credit or refund, or the petition, was filed within the time prescribed in subdivision (g) for filing claims, no such credit or refund shall be made of any portion of the tax paid more than four years (or, in the case of a tax imposed by this title, more than three years) before the filing of the claim or the filing of the petition, whichever is earlier."

(See also section 322 (c) and (d) of the Revenue Act of 1928, and section 601 of the 1928 Act, which amends sections 906 and 907 (a) and (b) of the 1924 Act.)

Section 906 (e) of the Revenue Act of 1924, as amended by section 1000 of the Revenue Act of 1926, provides as follows:

If the assessment or collection of any tax is barred by any statute of limitations, the decision of the Board to that effect shall, for the purpose of this title and of the Revenue Act of 1926, be considered as its decision that there is no deficiency in respect of such tax.

The Revenue Act of 1928 (section 601) amends sections 906 and 907 (a) and (b) as amended by the 1926 Act, but reenacts the above provision.

The Revenue Act of 1928, which contains section 611, also contains the other provisions above quoted or cited.

Section 507 of the 1928 Act specifically relates to overpayments or refunds in cases before the Board. It provides the manner and circumstances of making a refund if the Board determines that there is no deficiency and further finds that the taxpayer has made an overpayment.

Section 322 (c) of the 1928 Act specifically relates to cases *where the Commissioner has mailed a notice of deficiency and the taxpayer has filed a petition with the Board.* It provides as follows:

(c) *Effect of Petition to Board.*—If the Commissioner has mailed to the taxpayer a notice of deficiency under section 272 (a) and if the taxpayer files a petition with the Board of Tax Appeals within the time prescribed in such subsection, no credit or refund in respect of the tax for the taxable year in respect of which the Commissioner has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of such tax shall be instituted in any court except—

(1) As to overpayments determined by a decision of the Board which has become final; and

(2) As to any amount collected in excess of an amount computed in accordance with the decision of the Board which has become final; and

(3) As to any amount collected after the period of limitation upon the beginning of distraint or a proceeding in court for collection has expired; but in any such claim for credit or refund or in any such suit for refund the decision of the Board which has become final, as to whether such period has expired before the notice of deficiency was mailed, shall be conclusive.

(d) *Overpayment Found by Board.*—If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer. No such credit or refund shall be made of any portion of the tax paid more than two years before the filing of the claim or the filing of the petition, whichever is earlier.

That section, after setting out that no credit or refund might be made in respect of the tax for the taxable year for which a deficiency has been asserted when a proceeding has been instituted before the Board, provides exceptions. One of the specific exceptions to the making of refunds in a case before the Board is with respect to *any amount collected after the period of limitations has expired* and the determination by the Board as to whether the statute of limitations had expired *before the notice of deficiency was mailed shall be conclusive.* These provisions relating to refunds in cases before the Board are special and specific provisions in those particular cases. The effect of section 322 (c) and (d) in connection with section 601, which amends section 906 (e), is that when notice of deficiency has been mailed and a petition has been filed with the Board, the Commissioner can not make a refund except as to any amount collected in excess of the amount computed in accordance with the decision of the Board and except as to any amount collected after the period of limitations has expired as determined by the Board. If the Board finds that the statute of limitations has expired such decision shall be considered as a decision that there is no deficiency and any amount paid therefore would be an overpayment. The Board is given authority by section 322 (d) to find an overpayment, which that section provides shall be credited or refunded to the taxpayer when the decision of the Board becomes final.

The specific provisions of the statute relating to credits and refunds in cases after notice of deficiency has been mailed and the petition filed with the Board contain no reference to section 611. Section 611 is a general provision relating to refunds generally under the conditions therein stated and section 322 (c) of the 1928 Act and the other provisions relating to cases before the Board and the Board's jurisdiction are specific and particular provisions relating to refunds and credits in cases *after the mailing of the notice of deficiency and after the filing of the petition.*

Section 322 (c) and the other provisions relating to the Board and its jurisdiction are contained in the same Revenue Act with section 611. If section 611 be held to be applicable in cases within section 322, the latter section, especially subdivision (c) thereof, is modified thereby by implication, yet section 322 specifically refers to *any amount* collected after the expiration of the statute *in cases before the Board.* It contains no exception with respect to section 611. If Congress intended in such cases that section 322 did not apply to *any amount* collected, but only to amounts collected except as provided in section 611, it would have been a simple matter to have so provided. If section 611 governs cases pending before the Board, the question naturally arises as to why Congress specifically provided that in those cases before the Board refunds might be made as to any amount collected after the period of limitations has expired. While section 611 provides that a payment after the expiration of the statute of limitations in case the collection was stayed by an abatement claim is not to be considered an overpayment under section 607, still by express language a payment made after the expiration of the statute *in cases pending before the Board is to be refunded* as provided in section 322 (c). In other words, in cases where a notice of deficiency had been mailed and a petition filed with the Board, it is not a question as to whether there was an overpayment under section 607, referred to in section 611, but an overpayment as provided in section 322.

In my opinion, we are not warranted in saying that section 322 was put in the statute to give the Board jurisdiction to determine overpayments which are refundable. The Board is expressly given that jurisdiction by section 284 of the 1926 Act. This authority of the Board is retained in the 1928 Act in section 507, which amends section 284 of the 1926 Act in certain particulars not material for this discussion. Section 322 of the 1928 Act clearly had for its purpose a limitation on the power of the Commissioner to make refunds or credits after a petition had been filed with the Board, except under the circumstances therein mentioned. One of the circumstances under which the Commissioner is authorized to make a credit or refund under that section is where the Board has determined that any amount was collected after the period of limitations had expired. The power of the Commissioner to make refunds or credits even under this condition is further limited to taxes paid within a certain period. The Committees in charge of the bill in the course of its passage through Congress in their reports stated, however, " It will be noted that there is no limitation imposed in the case of amounts paid after the petition is filed."

It may fairly be assumed that the collection of the tax while a proceeding was pending before the Board was a jeopardy collection;

otherwise, it was prohibited by law. We can not assume that the Commissioner did an illegal act. Section 274 (a) of the Revenue Act of 1926, which was in effect when the notice of deficiency was mailed, when the proceeding was instituted before the Board and when the collection was made, prohibits collection of tax after a notice of deficiency has been mailed, except as provided in subdivisions (d) or (f) of section 274, or sections 279, 282 or 1001. Section 272 of the 1928 Act has the same effect. Section 279 of the 1926 Act, relating to jeopardy assessments, also provides for jeopardy collections. Section 279 (f) provides that the taxpayer may obtain a stay of collection of such an assessment by the filing of a bond, but there is no provision that he is required to do so in order to have the benefits of section 279 (i). Section 279 (i) provides, in referring to jeopardy assessments and collections, that, after a determination by the Board has been made, if the amount already collected before the decision of the Board exceeds the amount determined as the amount which should have been assessed, such excess shall be credited or refunded to the taxpayer as provided in section 284.

Section 273 (i) of the Revenue Act of 1928 provides, in the case of jeopardy collections, that, after the decision of the Board, if the amount already collected exceeds the amount determined as the amount which should have been assessed, such excess shall be credited or refunded as provided in section 322 above referred to. No reference whatever is made to any limitations contained in section 611. Since the taxpayer did not exercise its right to secure a stay of the collection after notice and demand, but under distraint proceedings or threat thereof paid the tax, it might be said that a tax so paid is no different from a tax voluntarily paid, but section 273 (i) of the 1928 Act and section 279 (i) of the 1926 Act make no such distinction, but provide, without any qualifications whatever, for the refund of any amount which exceeds the amount which should have been assessed. Clearly, the statute imposes on us the duty of considering whether the period of limitations had expired at the time of the mailing of the deficiency notice in determining what amount should have been assessed.

The whole purport of the jeopardy assessment and collection provisions in connection with proceedings before the Board and of the other statutory provisions relating to proceedings before the Board is that assessments and collections made while a proceeding is before the Board shall not affect any determination which the Board would have been authorized to make if such assessments or collections had not been made.

I think that the rule of statutory construction to the effect that every word or clause in the statute must be given effect if possible to

do so and that the legislative body in enacting statutory provisions did not intend to provide a wholly useless thing, should be applied here. Those rules of construction are too well recognized to require the citation of authorities to support them. Applying this rule, giving effect to section 611 and those provisions relating to cases before the Board, it would seem to follow that section 611 applies to all cases except those referred to in section 322 and other provisions relating to cases before the Board. Section 322 and section 611 are in conflict. This case comes squarely within both provisions, yet both provisions can not be given effect.

It is also a well recognized rule of statutory construction that general provisions in a statute, if in conflict with specific provisions relating to certain particular facts or conditions or things, must give way. Specific provisions control as to situations and facts which come within them over general provisions in a statute. Special provisions of the statute must be read as exceptions to general provisions. See 25 *R. C. L.* 10; *Atkins* v. *Fibre Disintegrating Co.*, 18 Wall. 272; *Townsend* v. *Little*, 109 U. S. 504; *United States* v. *Chase*, 135 U. S. 255; *McKee* v. *United States*, 164 U. S. 287; *Carroll* v. *Greenwich Insurance Co.*, 199 U. S. 401.

The question in applying this rule of construction is to determine whether section 611 or section 322 is the general provision and which is the specific provision. I think that section 611 is the general provision. That is the rule applicable generally to all refunds under the conditions therein stated. It is applicable to all cases before the courts and the Commissioner and, in general, before the Board. But if a notice of deficiency has been mailed and a petition filed with the Board, a different rule is provided. Section 322 relates specifically and particularly to certain classes of cases before the Board and I think that that section and other sections specifically relating to cases before the Board should be read as exceptions to the general rule provided in section 611. Section 322 could have no application generally, while section 611 does have general application to all cases under its provisions—certainly, in any event, a more general provision than section 322. This leads me to the conclusion that section 322 is the specific provision and should be read as an exception to section 611. Manifestly Congress had in mind that many cases coming under section 322 would also come under section 611, but, clearly, it was intended that both sections should be given effect and section 611 can be given effect, except as to cases coming under section 322. Section 611 provides that a refund can not be made if the tax is collected after the statute of limitations has expired where the collection was stayed by a claim in abatement, but section 322 provides that no credit or refund can be made for any reason after a petition has been filed with the Board, except

under the conditions therein stated. One of the conditions stated is the Board's determination that the collection was made after the running of the statute. It contains no exception of a case where the collection was stayed by a claim in abatement, even if this was the reason why the collection was made after the running of the statute. While I think that section 322 is sufficient to give us authority to determine that the taxpayer is entitled to a refund under the facts of this case, in my opinion, under other statutory provisions and other considerations we have such jurisdiction and authority. I also think that my view that this case is governed by section 322 and not by section 611 finds support based on other considerations.

The facts here raise the question whether the Commissioner could, by any action on his part after the petition has been filed with the Board, defeat the Board's jurisdiction clearly conferred upon it by the statutes above cited by collecting the tax.

At the time the petition herein was filed, the tax had not been collected or paid, and the Revenue Act of 1928 had not been enacted. The period of limitation on collection had expired approximately three and one-half years previously. We have jurisdiction in a proceeding before us to determine whether the statute of limitations had expired at the time of the mailing of the deficiency notice, and our determination that it had expired at that time is to be considered a decision that there is no deficiency. See section 906 (e) above quoted. Since the statute of limitations had run prior to the mailing of the deficiency notice and thus there was no deficiency, any amount paid as a deficiency is an overpayment. The statute authorizes us to make that determination as of the time of the mailing of the deficiency notice, and does not authorize the Commissioner to defeat that jurisdiction once obtained, take from us the power and duty imposed on us, or prevent us from making the determination which the act authorizes us to make by any action on his part while a proceeding is pending before us, even conceding that if the tax had been paid before the filing of the petition, it would be governed by section 611.

I do not construe the Supreme Court's decision in *Graham* v. *Goodcell*, 282 U. S. 409, or the related cases decided the same day, as being applicable to cases pending before the Board which are governed by specific statutory provisions not applicable to the cases considered by the court. We think that force is given to our view herein by the decision of the Circuit Court of Appeals (Fifth Circuit) in the case of *Peerless Woolen Mills* v. *Rose*, 28 Fed. (2d) 661. In that case the Commissioner had asserted a deficiency against the taxpayer, and, while a proceeding was pending before the Board on the issue of whether the statute of limitations barred collection of the tax shown on the return, proceeded to collect

by distraint. The court, in holding that the lower court was in error in declining to enjoin collection, said:

> By the Revenue Act of 1926 it is provided in section 284 (d), 26 USCA § 1065, that, if the taxpayer appeal to the Board, he cannot sue to recover any part of the tax, but under subdivision (e) of that section the Board was given jurisdiction if it should find that there was no deficiency, and that the taxpayer had made an overpayment of the tax, to determine the amount of such overpayment and direct that it be credited or refunded. Therefore, since the passage of the Revenue Act of 1926, the Board has jurisdiction, not only to redetermine a deficiency, but also, where there is no deficiency, to ascertain and order that credit be given for any overpayment of the tax.

Our determination that there is no deficiency because of the running of the applicable statute of limitations is just as effective a determination of no deficiency as if upon the merits.

The specific statutory provisions above quoted, relating to proceedings before the Board and our jurisdiction appearing in the same act with section 611, is an indication that Congress did not intend to modify them by section 611 in the absence of any exceptions or provisions or in the absence of any specific language in connection therewith. I think that the tax collected while the proceeding was pending before the Board is an overpayment, inasmuch as the statute of limitations barred collection when the deficiency notice was mailed.

I recognize the fact that my view herein is contrary to the conclusion reached by us in the case of *F. A. Gillespie*, 20 B. T. A. 1068. In that case the tax was collected by the Commissioner after the notice of deficiency had been mailed and while the proceeding was pending before the Board. Claim in abatement had theretofore been rejected. We based the decision in that case upon the principle subsequently laid down by the United States Supreme Court in the case of *Graham* v. *Goodcell, supra*. We did not discuss therein the specific provisions of the statute with respect to our jurisdiction in cases where taxes have been collected while proceedings were pending before the Board, nor did the Supreme Court have such a case before it.

In the case of *A. L. Gump et al.*, 21 B. T. A. 606, a Division decision, where the tax had been paid after the statute of limitations had run but prior to the mailing of the notice of deficiency, with respect to the rejected portion of the abatement claim filed we held that under section 607 there was an overpayment. This Division decision, upon reference to the full Board, was reversed on authority of the *Gillespie* case, *supra*. In the *Gump* case, however, the tax was not paid after the notice of deficiency and while the proceeding was pending before the Board as was true in the *Gillespie* case, and the *Gillespie* case is, therefore, not authority for the decision by the

Board of the *Gump* case in 22 B. T. A. 783. The conclusion reached in the *Gump* case, however, is not necessarily in error because it relies upon the *Gillespie* decision. The tax having been paid before the notice of deficiency was mailed, to wit, February 12, 1926, and the notice of deficiency having been mailed December 8, 1927, and no proceeding having been instituted before the Board prior to the time of the collection of the tax, the case is governed by section 611 of the 1928 Act, and we properly held that the payment thereof after the rejected claim in abatement was not an overpayment.

In the case of *Morris Metcalf*, 16 B. T. A. 881, we held that a payment of the tax after the period of limitations constituted an overpayment under section 607. Section 611 was not discussed and was not applicable to the facts of that case, no claim in abatement having been previously filed which stayed the collection.

In the case of *J. B. Dortch*, 19 B. T. A. 159, we held that payment of the tax having been made after the period of limitations had run constituted an overpayment under section 607. In that case the notice of deficiency was mailed January 8, 1926. A jeopardy collection was made on or before January 19, 1926, and the petition to the Board was not filed until April 21, 1926. No claim in abatement was filed which stayed the collection of the tax and the question presented in the case at bar was not present in that case. Section 611 was not involved. It is to be observed that it appears upon the face of the record in that proceeding that we had no jurisdiction thereof. Thus the only one of the above cases which appears to be in conflict with the views herein expressed is the *Gillespie* case, *supra*.

In my opinion collection of the tax is barred by limitation, and there is no deficiency. Section 906 (e) of the Revenue Act of 1924, as amended by section 1000 of the Revenue Act of 1926, *supra*.

There being no deficiency, the amount collected by the respondent while the proceeding was pending before the Board, in my opinion, is an overpayment to be refunded.

Love agrees with this dissent.