McKEESPORT TIN PLATE CO. v. HEINER, Collector of Internal Revenue.*

SAME v. UNITED STATES.

Nos. 6142, 6143.

District Court, W. D. Pennsylvania.

July 3, 1933.

S. Leo Ruslander, George K. Warn, Samuel Kaufman, R. J. Cleary, J. P. Fife, William J. Levy, Harry Friedman, and Douglass, Fife & Young, all of Pittsburgh, Pa., for plaintiff.

Louis E. Graham, U. S. Atty., and John A. McCann, Sp. Asst. to U. S. Atty., Bureau of Internal Revenue, both of Pittsburgh, Pa., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. P. Hertzog, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendants.

GIBSON, District Judge.

Above suits present practically the same questions, and relate to plaintiff's taxes for the year 1918. The only issue not common to each suit is the claim against the collector for $30,899.01, collected after the expiration of the Statute of Limitations.

As to the claim based upon the Statute of Limitations, it is plain to us that section 611 of the Revenue Act of 1928 (26 USCA § 2611) prevents recovery by the plaintiff. The tax was assessed in 1919, a claim for abatement was filed late in the same year, and collection of the tax was stayed by the collector. The tax was not collected until 1925, after the period of collection had expired, but the claim for abatement brought the matter within the scope of section 611 of the act of 1928, and prevents the return of the amount collected to plaintiff as an overpayment. See Graham & Foster v. Goodcell, 282 U. S. 410, 51 S. Ct. 186, 75 L. Ed. 415.

The main issues relate to the amortization of war facilities. In 1918, the plaintiff's plant consisted of forty-four hot mills, and was then the largest tin plate plant in the world. Twenty-two of its mills had been built in 1915 and 1916 to meet the growing demands for plaintiff's products. Plaintiff's

*For opinion denying motion for new trial, see 4 F. Supp. 923.

steam power plant, built in 1902, was obsolescent in 1917 and interfered with a proper production, and late in that year it was resolved to construct a new steam power plant upon another site. The new boilers were designed to have sufficient capacity to operate twenty-six additional hot mills. Land was purchased beside the river at a cost of over $200,000, retaining walls constructed, and a boiler house with twelve boilers was built. The original plan was to have sixteen boilers, but before the completion of the construction the war had ended, and the twenty-six hot mills, and the four additional boilers intended for their operation, were not built.

The allowance claimed by plaintiff as a deduction for amortization is founded upon the construction of its boiler house. An examination of the records of the Commissioner of Internal Revenue relating to the matter discloses the fact that plaintiff, from time to time, has varied its amortization claim. In its two returns filed in 1919, it claimed an allowance of $714,119.18. In a return filed March 15, 1920, it claimed an allowance for that year of $97,001.94, making the total deduction claimed for the two years $811,121.12. These claims were based upon a cost of $2,561,121.12. The proper cost, it is now agreed (if the cost of the land and wall be included), is $2,470,222.58. On October 13, 1923, plaintiff filed a claim for a total amortization allowance of $1,134,865.33, of which $683,282.46 was claimed for 1918. In this claim the percentage of value in use, theretofore fixed by the Commissioner at 72½ per cent., was not mentioned, the 72½ per cent. finding being accepted. On March 14, 1925, plaintiff filed a claim for refund, in which no change was made in the amount of amortization claimed in the immediately preceding claim, but in which the entire amount was claimed as a credit to the 1918 taxes.

Plaintiff's original pleadings in the instant suits are based upon the claim of an amortization allowance of $1,134,865.33, which, as stated, accepted the Commissioner's finding of 72½ per cent. as the value in use. Upon trial, however, it offered proof which (it contended) showed the value in use to be $735,014.33. This amount was reached by a rejection of the Commissioner's 72½ per cent. value in use, and the adoption of a 7/12 value, and the use of an average of the estimates of engineers as to the cost of a steam boiler plant which would have met the needs of the plaintiff in the post-war period. Permission was given plaintiff to amend its claim to bring it into agreement with its proof, but no formal order allowing a specific amendment has been submitted.

■■ After the Commissioner stated his determination that plaintiff's boiler house had a value in use of 72½ per cent., no protest in respect to that finding was made by the plaintiff, but his determination was accepted in subsequent claims. Under such circumstances there is considerable force in the contention of the defendant's counsel that the plaintiff is estopped by statute and regulations from now attempting to set up a different value in use. The statute (section 1113 (a) of the Revenue Act of 1926 [26 USCA § 156]), and the regulations established by its authority, require a claim for refund upon the Commissioner wherein "all facts relied upon in support of the claim should be clearly set forth under oath." While the plaintiff did protest against the original finding of the Commissioner of the value in use of the boiler house, its protest had, in part, been sustained. At no time was any claim made to the Commissioner that the value in use was as small as indicated in testimony offered by plaintiff, and he had no opportunity to rule upon a claim to that effect. No such opportunity having been given him, the suit must fail in so far as it is based upon that claim. United States v. Felt & Tarrant Mfg. Co., 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025. The necessity of filing a claim is not dispensed with because the claim will in all probability be rejected. Rock Island, A. & L. R. R. Co. v. United States, 254 U. S. 141, 41 S. Ct. 55, 65 L. Ed. 188.

■ The immediately foregoing comment, in respect to the claim of the defendant that plaintiff was prevented from now asserting a less value in use than that determined by the Commissioner, is perhaps unnecessary, in view of the fact that the evidence has failed to satisfy us that the Commissioner was in error in fixing the value in use at 72½ per cent. The testimony showed that all the new boilers of the plaintiff were in use at different times, but that the plant might have been operated with six in active operation. It is quite plain that at least two spares were desirable, if not entirely necessary. Part of the time, in the post-war period, eight boilers were used, and eight were used at the time of trial, when plaintiff was operating the same number of mills as in the post-war period. In any event, in the replacement of a manufacturing plant, good engineering would dictate proper provision for a reasonable increase in the output in the future. Under all the tes-

timony it would seem that the Commissioner's determination of the value in use was based upon sound reasoning. It will be remembered that some of the twelve boilers were installed subsequent to the close of the war.

■ The next matter for comment is seemingly complicated by the fact that the plaintiff's testimony as to replacement cost was based upon the theory that the value in use of plaintiff's boiler house was 58⅓ per cent., not 72½ per cent., and we therefore have no definite testimony of the replacement cost in the post-war period of a plant which had a 72½ per cent. value in use. The dearth of such testimony is immaterial, however, in view of our conclusion that plaintiff is not entitled to an amortization allowance based upon value in use and to an additional allowance based upon replacement cost in the post-war period.

■ Congress, by section 234 (a) (8), of the Revenue Acts of 1918 and 1921 (40 Stat. 1077; 42 Stat. 254), conferred wide powers upon the Commissioner of Internal Revenue in respect to the amortization of war facilities. Pursuant to those powers, among others, the Commissioner has, with proper approval, established article 184, regulations 62 (article 184 of regulations 45 being substantially the same). That article, as it relates to the present claims, provides that the amortization allowance is the difference between the original cost of the property and the value of the property on the basis indicated by its subsection (2), which is as follows: "(2) In the case of property not included in (1) above, the value shall be the estimated value to the taxpayer in terms of its actual use or employment in his going business, such value to be not less than the sale or salvage value of the property and not greater than the estimated cost of replacement under normal post-war conditions less depreciation and depletion. * * * "

The subsection (1), referred to in the subsection (2) quoted, relates to property which has been sold by the taxpayer or entirely discarded by him. The taxpayer, in the instant case, is endeavoring to apply both subsections to its advantage. Although still using the facility, and intending to continue the use, it seeks to have the court treat the matter as though the boiler house had been discarded in part. As stated, Congress has given the Commissioner great power in the matter of amortization, and, since originally conferring that power, has taken no action to curb or confine it. For ten years the regulations of the Commissioner have been established, and for that period his interpretations of them have been known. During that period he has applied the regulations in the same manner as in the amortization allowance to the plaintiff. This application of the law has been accepted and followed by the Board of Tax Appeals and by various courts, during the existence of the regulations, as being a correct observance of the statute providing for amortization. Under such circumstances, it is not for this court to undertake to establish a new regulation, or to interpret the existing regulation in another way than that in which it has been construed by its author, and as universally accepted.

By section 184 of both regulations 45 and 62, the Commissioner of Internal Revenue reasonably exercised the power conferred upon him by statute; and by such sections it is provided that the allowance for amortization, where the property has not been sold or abandoned, shall be the amount of the difference between the actual cost of the property and the post-war residual value, where (as here) such value in less than the replacement cost.

■ Plaintiff has also contended that the amortization allowance, whatever it may be, should have been credited to income for 1918, instead of being spread over the years 1918, 1919, and 1920. The claim is based upon the fact that the contract for the boiler plant had been made in 1918. The costs therefor, however, were not expended in 1918, but in the years over which the allowance was spread. The spread was in accordance with prior practice and followed article 185, regulation 62, which provides: "The amortization allowance shall be apportioned * * * and (b) in cases where the property was not completed in time for use in the production of articles contributing to the prosecution of the war, on the basis of the expenditures made on account of which amortization is allowed."

As was article 184, so article 185 has been established by the Commissioner pursuant to general powers conferred upon him, and what has been said in respect to article 184 is equally applicable to article 185. We see no error in the apportionment of the amortization allowance to the incomes for the three years in which the cost of the property was expended.

Judgment will be entered for the defendant in each case.