ADAM H. DAVIDSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CLIFFORD DRAKE DAVIDSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 60670, 60671. Promulgated April 30, 1936.

*George S. Atkinson, Esq.*, and *E. R. Burnett, C. P. A.*, for the petitioners.

*James L. Backstrom, Esq., Carroll Walker, Esq., R. B. Cannon, Esq.*, and *L. S. Mitchell, Esq.*, for the respondent.

OPINION.

Murdock: The period of limitations for assessment of taxes imposed by the Revenue Act, of 1926 was "three years after the return was filed." Sec. 277 (a) (1). That period had expired before the deficiency notices involved in these proceedings were mailed. However, that three-year period was "extended for a period of one year in the case of any married individual where such individual or his or her spouse filed a separate income-tax return for such taxable year and included therein income which under the laws of the State upon receipt became community property." Joint Resolution No. 88, 71st Cong., 2d sess., approved June 16, 1930, ch. 495, 46 Stat. 589. The four-year period provided by the joint resolution had not expired when the notices of deficiency involved herein were mailed. The petitioners contend "that the joint resolution is unconstitutional and void because it violates Article 5 of the Constitution of the United States in that it purports to deprive certain specific taxpayers of property without due process of law." They fail, however, to cite any authorities which are really in point. The statute is presumed to be valid. It took away no vested rights. The petitioners argue that the statute is arbitrary and capricious in its classification of the persons affected. There was some question at the time of the enact-

ment of the joint resolution whether married persons living in community property states had a right to file separate income tax returns reporting thereon one-half of the community income. The question was settled, in so far as it affected persons living in Texas, by the decision of the Supreme Court on November 24, 1930, in the case of *Hopkins* v. *Bacon*, 282 U. S. 122. The purpose of the joint resolution was to protect the interests of both the Government and the taxpayers pending the final decision of the question. See Committee Reports on the resolution in the Congressional Record, June 11, 1930, pp. 10923–10925. There was no reason to extend the period of limitations as to other classes of taxpayers. Other taxpayers would not be affected by decision of the test cases then pending before the courts. The classification was neither arbitrary nor capricious, and the resolution is not unconstitutional. Cf. *Poe* v. *Seaborn*, 282 U. S. 101; *Graham* v. *Goodcell*, 282 U. S. 409.

Davidson received 20,000 shares of Oklahoma Natural Gas Corporation stock in 1926 as part of his compensation for bringing the business to the attention of the investment bankers and for performing whatever other services he may have performed in connection with the organization of the Oklahoma Natural Gas Corporation. All of the 20,000 shares thus received belonged to him. The same 20,000 shares were sold in the taxable year now before the Board, and, at the time of the sale, all of the 20,000 shares still belonged to Davidson. Between the date when he received the shares in 1926 and the date when he sold them in 1927, he had parted with possession of certificates for 6,000 shares. But it is clear from the present record that those shares still belonged to Davidson. He always insisted that he was at all times the owner of the 6,000 shares. Sibley may have made some claim that some of the 6,000 shares belonged to him. But Davidson entered suit against Sibley, contending that the shares had always belonged to him and demanding full restitution from Sibley, and all parties to that suit agreed, in the final settlement, that the shares had at all times belonged to Davidson and Davidson was to receive certain compensation for permitting the proceeds of the sale to be used to pay the debts of Sibley and another. The evidence clearly indicates that none of the 6,000 shares belonged to Sibley at the date of the sale.

The petitioners on their return deducted $110,780 from the proceeds of the sale for the alleged reason that that portion of the proceeds of the sale went to Sibley as his share of the profit from the transaction. They now claim that the correct amount is $122,780. The record not only fails to sustain the petitioners in this contention, but it proves conclusively that a substantial part of the amount should not be used to reduce the petitioners' profit from the sale of the 20,000 shares. The increase of $12,000 is alleged to have something to do

484

with a note for $8,500 given by Davidson and one for $3,500 given by his wife. But we are unable to make any relative finding of fact from the record in regard to the $12,000. Sibley testified that he had advanced some money to Davidson to cover some expenses in connection with Davidson's participation in the organization of the Oklahoma Natural Gas Corporation. He never stated just how much he had advanced, but once said it was about $20,000. He also testified that at the time the 20,000 shares were sold Davidson owed him $40,000 or $50,000 and the debts due him from Davidson were to be canceled by reason of the fact that the proceeds of the sale of some of the stock were to be received by banks and credited against Sibley's indebtednesses to the banks. At least $76,000 of the $144,000 received by the Seaboard Bank out of the proceeds of the sale were used for this purpose. Davidson got full benefit from the proceeds of the sale thus used. The record is not clear as to what became of the rest of the proceeds of the sale which were paid to the Seaboard Bank, but it allows the inference that the entire amount received by the Seaboard Bank directly benefited Davidson. There is, therefore, no reason to reduce the amount realized from the sale of the stock by any amount, except the uncontested amount used to pay taxes and expenses of the sale.

The next argument advanced on behalf of the petitioners is that the 20,000 shares received by Davidson in 1926 had a fair market value of $15 a share or $300,000 at the time he received them in 1926; he, therefore, received taxable income of $300,000 in 1926 through receipt of the shares; each share thereafter had a basis of $15 for the computation of gain or loss to Davidson; therefore, the amount realized in 1927 from the sale of the shares should be reduced by this basis of $300,000. The contention thus made is inconsistent with the determination of the Commissioner. The petitioners had the burden of proof. They have called no witness to testify before the Board that the shares had a fair market value of any particular amount at the time they were received by Davidson in 1926. The petitioners' counsel would infer that the shares were worth $15 in 1926 because Sibley was able to obtain some loans from banks in 1926 and 1927 in connection with which he pledged some of these shares as collateral. They would also draw inferences of value from certain statements appearing in exhibits. Not only is the evidence upon which they rely extremely weak, but there are other reasons for holding that the stock had no fair market value at the time it was received by Davidson in 1926. Davidson had been engaged for a number of years in the business of selling securities. If the 20,000 shares of stock which he received had had a fair market value in 1926, he would have known that fact and should have returned as income for that year the total fair

market value of the shares which he received. He did not report any income in 1926 from receipt of the shares, which in itself is an indication that, in his opinion, the shares had no fair market value at that time. If the shares had had a fair market value at the time received, they would have had a basis of that amount in the hands of Davidson for the purpose of computing gain or loss from the sale or disposition of the shares by him. He sold the shares in 1927 and reported a gain from the transaction in his income tax return for that year. But he claimed no basis in computing his profit on his return. That is another indication that in his opinion the shares had no fair market value at the time he received them in 1926. The question of the fair market value of the shares was raised thereafter by a revenue agent, and Davidson stated to the revenue agent that, in his opinion, the shares had no fair market value at the time he received them in 1926. Davidson swore to the original petition in the proceeding now pending. That petition contained a statement that the shares of stock which he received in 1926 were evidenced by temporary certificates, had no par value, no market value, and no ascertainable value of any kind, represented secondary issues of a corporation which had only recently been financed, and, hence, were not returnable as income in the year 1926. The claim that these shares had a fair market value in 1926 was first advanced on behalf of the petitioners in an amended petition brought forward for the first time when the case was on for hearing. New counsel had been but recently employed and was apparently responsible for the new contention. Davidson was a witness in this proceeding. But he did not testify that, in his opinion, the shares had any fair market value at the time he received them in 1926. The determination of the Commissioner is to the effect that the shares had no fair market value in 1926, and we hold, after considering all of the evidence in the case, that the shares had no fair market value when received by Davidson in 1926 and, therefore, the petitioners are not entitled to reduce the amount realized in the sale in 1927 by any basis.

Reviewed by the Board.

*Decision will be entered for the respondent.*